DANIEL J. TYUKODY (SBN 123323)
*dtyukody@orrick.com*
MICHAEL C. TU (SBN 186793)
*mtu@orrick.com*
TEODORA E. MANOLOVA (SBN 233333)
*tmanolova@orrick.com*
JASON L. KRAJCER (SBN 234235)
*jkrajcer@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:    213-629-2020
Facsimile:    213-612-2499

Attorneys for Defendants
Pacific Capital Bancorp,
George Leis and David Porter

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| In re PACIFIC CAPITAL BANCORP SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. CV 09-6501 RGK (PLAx)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS *SHOTKE* COMPLAINT**<br><br>Date:        February 1, 2010<br>Time:        9:00 a.m.<br>Ctrm.:       Hon. R. Gary Klausner<br>                Courtroom 850<br>                Roybal Federal Courthouse |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................... 1

II.     THE REFORM ACT'S HEIGHTENED STANDARDS FOR
        PLEADING SECURITIES FRAUD WERE DESIGNED TO
        FACILITATE DISMISSALS AT THE PLEADING STAGE ....................... 5

III.    THE COMPLAINT FAILS TO ADEQUATELY PLEAD THE
        FALSITY OF THE DEFENDANTS' CHALLENGED
        STATEMENTS ...................................................................................... 6

        A.    The Relevant Case Law Supports Dismissal Of The Complaint.......... 6

        B.    The Complaint Fails To Plead With Any Particularity The
              Existence Of A False Statement ............................................. 8

IV.     THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS
        GIVING RISE TO A "COGENT AND COMPELLING"
        INFERENCE OF SCIENTER .................................................................. 13

V.      THE COMPLAINT FAILS TO ADEQUATELY PLEAD LOSS
        CAUSATION ....................................................................................... 16

VI.     DEFENDANTS' STATEMENTS ARE PROTECTED BY THE
        REFORM ACT'S STATUTORY SAFE HARBOR ................................... 17

VII.    PLAINTIFFS' SECTION 20(a) CLAIM MUST FAIL ............................... 20

VIII.   CONCLUSION .................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re 2007 Novastar Fin., Inc. Sec. Litig.*,
   2008 WL 2354367 (W.D. Mo. 2008), *aff'd*,
   579 F.3d 878 (8th Cir. 2009) ..................................................................7, 8, 10, 15

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) .......................................................................... 15

*Atlas v. Accredited Home Lenders Holding*,
   556 F. Supp. 2d 1142 (S.D. Cal. 2008) ............................................ 8

*In re Azurix Corp. Sec. Litig.*,
   198 F. Supp. 2d 862 (S.D. Tex. 2002) .............................................. 19

*Barr v. Matria Healthcare, Inc.*,
   324 F. Supp. 2d 1369 (N.D. Ga. 2004) .............................................. 19

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ....................................................................................... 5

*Coble v. Broadvision, Inc.*,
   2002 WL 31093589 (N.D. Cal. Sept. 11, 2002)......................... 12, 19

*In re ConAgra Foods, Inc., Sec. Litig.*,
   2006 WL 3247199 (D. Neb. Nov. 7, 2006)......................................... 17

*In re Convergent Tech. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ..................................................................... 11

*In re Countrywide Fin. Corp. Deriv. Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008)............................................. 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)............................................. 8

*In re Cypress Semiconductor Sec. Litig.*,
   891 F. Supp. 1369 (N.D. Cal. 1995)P .................................................. 11

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005)................................................................. 2, 16

*Denny v. Barber*,
   576 F.2d 465 (2d Cir. 1978) ..................................................................... 15

*Druskin v. Answerthink, Inc.*,
   299 F. Supp. 2d 1307 (S.D. Fla. 2004)............................................... 17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ..................................................................................... 4, 17

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox
Co.*,
4
    353 F.3d 1125 (9th Cir. 2004) ........................................................................ 18

5

*ESS Tech., Inc. Sec. Litig.*,
    2004 WL 3030058 (N.D. Cal. Dec. 1, 2004) ................................................... 19

6

7

*Fidel v. Farley*,
    392 F.3d 220 (6th Cir. 2004) .......................................................................... 15

8

*In re FVC.com Sec. Litig.*,
    136 F. Supp. 2d 1031 (N.D. Cal. 2000) .......................................................... 14

9

10

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ............................................................................ 7

11

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ............................................................................ 6

12

13

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) .......................................................................... 20

14

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) ............................................................. 5

15

16

*In re Imperial Credit Indus., Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) ........................................................... 2

17

*In re Jahanian*,
    2009 WL 3233161 (Bankr. E.D. Va. Sept. 28, 2009) ...................................... 1

18

19

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) ............................................................................ 3

20

*Limantour v. Cray, Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006) ..................................................... 17

21

22

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...........................................................4, 13, 16, 17

23

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................ 14

24

25

*In re New Century*,
    2008 WL 5147991 (C.D. Cal. Dec. 3, 2008) .................................................... 8

26

*New York State Teacher's Ret. Sys. v. Fremont Gen. Corp.*,
    2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) ................................................. 7

27

28

- iii -

1

2

### TABLE OF AUTHORITIES
### (continued)

Page

3

*Reiger v. PricewaterhouseCoopers LLP,*

4
117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd sub nom. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002)....................14

5

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2001)........................................................5, 6, 13

6

7

*Santa Fe Indus. v. Green,*
430 U.S. 462 (1977) ........................................................................15

8

*In re SeeBeyond Tech. Corp. Sec. Litig.,*
266 F. Supp. 2d 1150 (C.D. Cal. 2003).................................................18

9

10

*In re Silicon Graphics Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999).......................................................13, 20

11

*In re Software Publ'g Sec. Litig.,*
1994 WL 261365 (N.D. Cal. Feb. 2, 1994).............................................12

12

13

*In re Syntex Corp. Sec. Litig.,*
95 F.3d 922, 934 (9th Cir. 1996).........................................................9

14

*In re Teco Energy, Inc. Sec. Litig.,*
2006 WL 845161 (M.D. Fla. March 30, 2006)........................................16

15

16

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
551 U.S. 308 (2007) ...........................................................3, 5, 6, 13

17

*Thornton v. Micrografx, Inc.,*
878 F. Supp. 931 (N.D. Tex. 1995)......................................................14

18

19

*Tripp v. IndyMac Fin. Inc.,*
2007 WL 4591930 (C.D. Cal. Nov. 29, 2007)........................................7, 14

20

*U.S. v. Jupiter Aluminum Corp.,*
2009 WL 2970385 (N.D. Ind. Sept. 14, 2009)...........................................1

21

22

*In re Verifone Sec. Litig.,*
11 F.3d 865 (9th Cir. 1993)..............................................................9

23

*In re Washington Mutual, Inc. Sec. Litig.,*
2009 U.S. Dist. LEXIS 99727 (W.D. Wash. Oct. 27, 2009) ..........................7

24

25

*Winer Family Trust v. Queen,*
503 F.3d 319 (3d Cir. 2007) ...............................................................3

26

*In re Worlds of Wonder Sec. Litig.,*
35 F.3d 1407 (9th Cir. 1994).............................................................14

27

28

*Zucco Partners v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009)..............................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**FEDERAL STATUTES**

15 U.S.C. §78u-4(b) ............................................................................. 6, 8

15 U.S.C. §78u-5(c) ....................................................................4, 18, 19, 20

15 U.S.C. §78u-5(e) ............................................................................. 19

17 C.F.R. §240.10b-5 ..................................................................1, 2, 6, 20

Fed. R. Evid. 201 ................................................................................. 1

Fed. R. Civ. P. 8 ................................................................................. 1, 5

Fed. R. Civ. P. 9(b) ............................................................................. 1, 5

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1

Pub. L. No. 104-67, 109 Stat. 737 (1995) ........................................... *passim*

**MISCELLANEOUS**

H.R. Rep. No. 369 (1995) (Conf. Rep.) ....................................... 5, 18, 19

Richard Posner, *Capitalism in Crisis*, The Wall Street Journal, May 7, 2009 .......... 1

Statement of Financial Accounting Standards No. 5 (Financial Accounting
    Standards Bd. 1975) ....................................................................... 2

Statement of Financial Accounting Standards No. 154 (Financial Accounting
    Standards Bd. 2005) ....................................................................... 9

1    Defendants Pacific Capital Bancorp ("PCB" or the "Company"), George Leis

2  and David Porter (collectively, the "Individual Defendants,") respectfully submit this

3  memorandum in support of their motion to dismiss plaintiffs' Complaint for

4  Violation of Federal Securities Laws (the "Complaint"),[1] pursuant to the provisions

5  of the Private Securities Litigation Reform Act of 1995 (the "Reform Act")[2] and Fed.

6  R. Civ. P. 8, 9(b) and 12(b)(6).

7  **I.    INTRODUCTION**

8    This is a simple Rule 10b-5 case[3] based upon a single event, namely an

9  increase in PCB's reserves for loan losses in the second quarter of 2009.  ¶46.[4]

10 According to plaintiffs, this increase rendered false and misleading prior statements

11 by defendants regarding the perceived adequacy of prior reserves.  ¶¶2, 59-65.

12    The Complaint fails to satisfy the requirements of the Reform Act on many

13 levels.  There is no allegation of any fact known to defendants that rendered the

14 earlier reserves, or statements indicating confidence in them, false when made.  There

15 is no allegation that earlier reserves were inadequate under Generally Accepted

16 Accounting Principles ("GAAP"), or that the reserves should be restated.  There is no

17 document, no witness, and no fact alleged, which would lead one to conclude that

18 defendants did anything other than make their best efforts at setting reserves during a

---

19  [1] This complaint, captioned *Shotke v. Pacific Capital Bancorp, et al.* ("*Shotke*") is

20 virtually identical to the complaint captioned *Jurkowitz v. Pacific Capital Bancorp, et al.* (Case No. CV 09-6501) ("*Jurkowitz*"), where the Court recently took defendants' motion to dismiss under submission.  After the Court ordered

21 consolidation of the two actions, defendants offered, but plaintiffs refused, to enter into a stipulation that the Court's ruling in *Jurkowitz* would apply to *Shotke*, thereby

22 necessitating this motion.  In discussing the proposed stipulation, plaintiffs pointed to paragraphs 37-39 of the *Shotke* complaint as the reason why these two complaints

23 are different, but the statements in those paragraphs are not alleged to be false (*see Shotke* ¶59 alleging only that the statements in paragraphs 26-34 were false); two of

24 the statements  were made outside the class period (¶¶38-39); and none of these statements seem to have much to do with the basic substance of plaintiffs'

25 complaint.  Accordingly, this motion to dismiss is substantially identical to the one defendants filed in *Jurkowitz*.

26  [2] Pub. L. No. 104-67, 109 Stat. 737 (1995), codified at 15 U.S.C. §78u-4 & 5.

27  [3] 17 C.F.R. §240.10b-5.

28  [4] All ¶ or ¶¶ references are to the Complaint.

1  time of great economic stress and upheaval.[5]

2      The purported class period begins on April 30, 2009, when PCB announced

3  first quarter results, which stated that the Company was taking a provision for loan

4  losses in the amount of $73.5 million, bringing the Company's total allowance for

5  loan losses up to $141 million.  ¶¶23-25.  It ends with the Company's announcement

6  of second quarter results on July 30, 2009, which stated that the Company was

7  recording a provision for loan losses in that quarter in the amount of $194.1 million.

8  ¶46.  The entirety of plaintiffs' case is based on the unsupported supposition that

9  defendants "knew" when they took the first quarter reserve that this second reserve

10  would be necessary, but plaintiffs offer neither well-pled facts nor even a rational

11  theory as to why this would be true.

12      In fact, the Complaint itself articulates the completely non-fraudulent reasons

13  why the second reserve was taken.  Of the $194.1 million, $77.1 million was related

14  to charge offs for residential and commercial loans that went bad in that quarter, and

15  an additional $117 million was taken because the Company revised its calculation

16  methods under Statement of Financial Accounting Standards No. 5 ("FAS 5")[6] to use

17  a shorter time frame for assessing projected losses.  ¶53.  That shorter time period

18  _____

19  [5] The severity of the current economic crisis has been widely recognized.  *See,*
*e.g., U.S. v. Jupiter Aluminum Corp.,* 2009 WL 2970385, at *4 (N.D. Ind. Sept. 14,
20  2009) ("The national and world economies have suffered an unexpected and
dramatic recession – far worse than any recession since the Great Depression."); *In*
21  *re Jahanian,* 2009 WL 3233161, at *3 (Bankr. E.D. Va. Sept. 28, 2009) (delay in
sale was "the consequence of an economic crisis unprecedented in this nation since
22  the Great Depression"); Richard Posner, *Capitalism in Crisis,* The Wall Street
Journal, May 7, 2009 ("The current economic crisis so far eclipses anything the
23  American economy has undergone since the Great Depression that 'recession' is too
tepid a term to describe it.").  The Court can take judicial notice of the current
24  economic crisis pursuant to Federal Rule of Evidence 201, and defendants request
that it do so in the accompanying Request for Judicial Notice ("RJN").  *See, e.g., In*
25  *re Imperial Credit Indus., Sec. Litig.,* 252 F. Supp. 2d 1005, 1015-16 (C.D. Cal.
2003) (taking judicial notice of "dramatic changes . . . affecting participants in the
26  credit industry," including the "Asian crisis" and "Long Term Capital
[Management's] default").

27  [6] For the Court's convenience, a copy of FAS 5, along with other relevant
accounting literature, is attached to defendants' Appendix of Non-Published Cases
28  and Other Authorities in Support of Defendants' Motion to Dismiss Plaintiffs'
Complaint ("Appendix").

gave greater weight to the current period of economic stress, resulting in an increase in reserves.  *Id.*  Plaintiffs do not dispute the veracity of these facts, but essentially allege that defendants should have been more prescient three months earlier.

To plead a case under Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).  The Complaint fails to adequately plead at least three of these elements – (i) the existence of a material misstatement or omission; (ii) scienter; and (iii) loss causation.

Regarding the existence of a material statement or omission, all plaintiffs do is draw unsupported inferences from relatively mild statements of optimism, and assert that the speaker did not honestly believe what was said.  While statements of belief can be actionable in some cases,[7] there is not a single fact alleged in the Complaint that supports the proposition that any of the defendants did not actually believe what they said.

Regarding scienter, under the relevant Supreme Court and Ninth Circuit tests, a complaint must "give rise to a 'strong' inference of scienter" when the court considers both the facts alleged in the complaint and "plausible competing inferences."  *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007); *accord Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  There are no facts alleged in the Complaint which support a plausible inference of scienter. Plaintiffs offer no rational reason why, if defendants "knew" the first quarter reserve should have been bigger, they deliberately failed to take it.  There is no allegation of insider selling, or of any other objective fact that courts in the Ninth Circuit have looked to in assessing the plausibility that a defendant acted with a deliberate intent to mislead.  Instead, the most plausible inference that arises from the Complaint is that

---

[7] *See Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994) (a "statement of belief is a 'factual' misstatement actionable under §10(b) if . . . the statement is not actually believed . . . .").

1    during a time of great economic stress, defendants did their best to set reserves at

2    appropriate levels, and made adjustments as additional information came to light.

3    *See, e.g.*, *Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) (applying

4    *Tellabs* to dismiss a claim that defendants' original cost estimates were fraudulent,

5    and finding more plausible the inference that defendants simply accumulated better

6    knowledge over time).

7         As to loss causation, the Complaint fails to satisfy the pleading requirements

8    specified by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336

9    (2005), as interpreted by the Ninth Circuit in *Metzler Inv. GMBH v. Corinthian*

10   *Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008).  Pursuant to *Metzler*, a plaintiff must

11   plead sufficient facts to show that "the drop in [defendant's] stock price was causally

12   related to [the defendant's] financial misstatement[s]."  *Id.* at 1062 (internal quotation

13   marks omitted).  In this case, approximately 93% of PCB's class period stock price

14   decline occurred *prior* to PCB's announcement of second quarter reserves,

15   whereupon plaintiffs allege that "[t]he artificial inflation was removed from the

16   price."  ¶56.  Furthermore, the market's response to the announcement of the reserves

17   was only a small dip in PCB's stock price,[8] from which PCB quickly recovered.

18   These facts, evident upon the face of the Complaint and from matters judicially

19   noticeable, negate the sufficiency of plaintiffs' pleading of loss causation.

20        Finally, the Complaint should also be dismissed because of the statutory safe

21   harbor, pursuant to which forward-looking statements accompanied by meaningful

22   cautionary language are not actionable as a matter of law.  *See* 15 U.S.C. §78u-

23   5(c)(1)(A)(i).  All of defendants' allegedly false class period statements consisted of

24   forward looking statements that were accompanied by meaningful cautionary

25   language, including specific warnings that "[m]anagement cannot guarantee that the

26   allowance for loan losses will not increase further or that regulators will not require

27   the Company to increase this allowance."  RJN, Ex. Q at 197.

28   _____
     [8] *See* RJN, Ex. V.

DEFENDANTS' MEMORANDUM ISO
MOTION TO DISMISS COMPLAINT
CASE NO. CV 09-6501 RGK (PLAX)

## II.    THE REFORM ACT'S HEIGHTENED STANDARDS FOR PLEADING SECURITIES FRAUD WERE DESIGNED TO FACILITATE DISMISSALS AT THE PLEADING STAGE

While there may be situations where motions to dismiss are a mere sideshow or simply an instrument of delay, Congress and the Supreme Court have recognized that in the securities class action context, they are much closer to the main event. This is because of the disproportionate ability these cases have to extract extortionate settlements, and harm rather than help shareholders. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975) ("in the field of federal securities laws . . . even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal . . . ."); *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001) ("lawsuits can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses.").[9]

Private securities cases are unique because they are reviewed pursuant to the "[e]xacting pleading requirements" of the Reform Act. *Tellabs,* 551 U.S. at 313. Congress enacted the Reform Act to deter abusive securities lawsuits and to facilitate *their dismissal at the pleading stage*. *Id.* at 320 ("Designed to curb perceived abuses of the §10(b) private action . . . the PSLRA installed both substantive and procedural controls . . . . [including] heightened pleading requirements in actions brought pursuant to §10(b) and Rule 10b-5.") (internal citations and quotation marks omitted); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1016 n.11 (S.D. Cal. 2005) ("[T]he purpose of all of the [Reform Act's] heightened pleading requirements [is] to weed out meritless lawsuits at the pleading stage.").

There are two primary aspects of the Reform Act which take cases filed under it outside the normal "short and plain statement" standard of Fed. R. Civ. P. 8, and

---

[9] *See also* H.R. Rep. No. 369, at 35 (1995) (Conf. Rep.) ("innocent parties are often forced to pay exorbitant 'settlements.'").

1  even outside the strenuous standards for pleading fraud with particularity found in

2  Fed. R. Civ. P. 9(b).  The first relates to the legal adequacy of a plaintiff's factual

3  pleading of a misstatement or omission.  The Reform Act requires that plaintiffs

4  "specify *each* statement alleged to have been misleading, the reason or reasons why

5  the statement is misleading, and, if an allegation regarding the statement or omission

6  is made on information and belief, the complaint shall state with particularity *all* facts

7  on which that belief is formed."  15 U.S.C. §78u-4(b)(1) (emphasis added).[10]  The

8  second relates to the specificity with which a plaintiff must allege a defendant's

9  scienter, or deliberate intent to mislead.  Plaintiffs must "state with particularity facts

10  giving rise to a *strong inference* that the defendant acted with the required state of

11  mind," and must do so for "each act or omission alleged to violate" Section 10(b).  15

12  U.S.C. §78u-4(b)(2) (emphasis added); *see Gompper v. VISX, Inc.*, 298 F.3d 893, 895

13  (9th Cir. 2002) (both falsity and scienter must be pled with particularity).  The

14  "inference of scienter must be more than merely 'reasonable' or 'permissible' – it

15  must be *cogent and compelling*, thus strong in light of other explanations."  *Tellabs,*

16  551 U.S. at 324 (emphasis added).

17        Uniquely in securities cases, a court must consider all reasonable inferences to

18  be drawn from the complaint, *including inferences unfavorable to plaintiffs*.

19  *Gompper*, 298 F.3d at 896-97.  A "court must consider plausible nonculpable

20  explanations for the defendant's conduct."  *Tellabs,* 551 U.S. at 324.  "The

21  heightened pleading requirements of the [Reform Act] are an unusual deviation from

22  the usually lenient requirements of federal rules pleading.  In few other areas are

23  motions to dismiss . . . so powerful."  *Ronconi v. Larkin*, 253 F.3d at 437.

**III.**  **THE COMPLAINT FAILS TO ADEQUATELY PLEAD THE FALSITY OF THE DEFENDANTS' CHALLENGED STATEMENTS**

**A.**  **The Relevant Case Law Supports Dismissal Of The Complaint**

Courts have been dealing with loan loss reserve cases for a long time.  For

---

[10] Plaintiffs' opening paragraph acknowledges that the Complaint is based upon "information and belief."  Compl. p.2.

1  example, fifteen years ago, and prior to passage of the Reform Act, the Ninth Circuit

2  sitting *en banc* had the following to say about setting loss reserves:

> The fact that an allegedly fraudulent statement and a later statement are *different* does not necessarily amount to an explanation as to why the earlier statement was false. For example, both the valuation of assets and the setting of loan loss reserves are based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure. In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

9  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (emphasis in

10  original).

11  During the recent financial crisis there has been a resurgence of cases alleging

12  fraudulent loan loss reserves along with other issues.  These cases have been

13  dismissed, even when they offered substantially more detail than the plaintiffs'

14  Complaint does here.  *See, e.g., Tripp v. IndyMac Fin. Inc.*, 2007 WL 4591930, at *3

15  (C.D. Cal. Nov. 29, 2007) (dismissing complaint alleging inadequate reserves where

16  confidential witnesses identified "allegedly problematic areas of [bank's] operations"

17  and plaintiffs pled specific GAAP violations); *New York State Teacher's Ret. Sys. v.*

18  *Fremont Gen. Corp.*, 2009 WL 3112574, at *11, 14 (C.D. Cal. Sept. 25, 2009)

19  (dismissing complaint notwithstanding the existence of confidential witness

20  statements and internal reports concerning improprieties, and allegations of

21  defendants' incentives to manipulate the accounting); *In re Countrywide Fin. Corp.*

22  *Deriv. Litig.*, 554 F. Supp. 2d 1044, 1069-70 (C.D. Cal. 2008) (allegations of failure

23  to increase loan loss reserves did not support an inference of scienter under Section

24  10(b) despite the fact that defendants *decreased* loan loss reserves by "more than

25  half" and that "reserves were significantly lower" than other banks); *In re 2007*

26  *Novastar Fin., Inc. Sec. Litig.*, 2008 WL 2354367, at *3 (W.D. Mo. 2008)

27  (dismissing complaint alleging inadequate reserves, notwithstanding the fact that "the

28  Company may have changed or even weakened its internal controls or underwriting

standards" and numerous confidential witnesses "report[ed] changes in various policies . . . [that] increase[d] risks faced by the Company"), *aff'd*, 579 F.3d 878 (8th Cir. 2009).[11]

The false premise underlying plaintiffs' Complaint is the idea that subsequent increases to loan loss reserves must mean that earlier reserves were "false." But loan loss reserves are just estimates of the expected performance of the loan pool at a snapshot in time and they are always subject to change, particularly during periods of economic stress. *See IndyMac*, at *4 (rejecting plaintiffs' argument that increases in loan loss reserves and charge-offs were "a clear indication Defendants knew a significant portion of the loans . . . were troubled when made" and finding "an even stronger inference is that Defendants were simply unable to shield themselves as effectively as they anticipated from the drastic change in the housing and mortgage markets and, once that inability became evident, IndyMac's financials changed accordingly."); *Novastar*, 2008 WL 2354367, at *3 ("The Company may have incorrectly believed it had adequate reserves, but the mere fact that those reserves eventually proved to be inadequate does not mean a false statement was made.").

### B.  The Complaint Fails To Plead With Any Particularity The Existence Of A False Statement

In this case, plaintiffs never even adequately plead the existence of a false

---

[11] The loan loss reserve cases that have survived dismissal rely upon factors that are not present here. *See, e.g.*, *In re Washington Mutual, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 99727, at *34, 36, 52-53 (W.D. Wash. Oct. 27, 2009) (scienter properly pled where specific defendants received numerous red flags, including an internal memorandum showing gaps in internal controls, and the senior vice president of accounting policy told the CFO about deterioration of risk management and accounting standards); *In re New Century*, 2008 WL 5147991, at *20 (C.D. Cal. Dec. 3, 2008) (allegations sufficient where, among other things, confidential witnesses stated "that the repurchase claims backlog was intentionally designed to inflate earnings in an effort to 'game the system[]'"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145-89 (C.D. Cal. 2008) (allegations sufficient where among other things, plaintiffs alleged specific GAAP violations, and certain insiders engaged in massive selling while company was repurchasing stock); *Atlas v. Accredited Home Lenders Holding*, 556 F. Supp. 2d 1142, 1151, 1156 (S.D. Cal. 2008) (allegations concerning inadequate reserves sufficiently particularized where lender decreased its reserves despite increasing delinquencies, and several confidential witnesses stated with specificity that individual defendants ordered deviations from the company's underwriting policy).

statement.  Under the Reform Act, plaintiffs were required to state "with

particularity" "the reason or reasons why the statement is misleading."  15 U.S.C.

§78u-4(b)(1).  Instead of pleading with particularity, plaintiffs offer up only vague

generalities.  Plaintiffs' articulation of how defendants' statements allegedly were

false appears at paragraphs 59-65 of their Complaint,[12] which refer back to

defendants' actual statements at paragraphs 26-34 of the Complaint.  Paragraph 59,

for example, refers to paragraphs 26 to 34 collectively, and asserts that each of the

statements made in those paragraphs was "materially false or misleading when issued

because those assurances to investors that the Company was adequately reserved

were belied by the Company's admission on July 30, 2009 that the Company's

reserves were not conservatively determined prior to that time and were, in fact,

wholly inadequate to meet its exposure needs."  ¶59.

        There are several fundamental problems with this allegation.  First, the

assertion that the Company made an "admission" that "reserves were not

conservatively determined" is just plaintiffs' unwarranted inference or legal

conclusion, not a factual allegation.  *See In re Verifone Sec. Litig.* 11 F.3d 865, 868

(9th Cir. 1993) ("conclusory allegations of law and unwarranted inferences are

insufficient to defeat a motion to dismiss").  Just because reserves are later increased

does not equate to an "admission" that a prior reserve was false or even wrong.

Reserves are inherently accounting estimates, and changes in estimates are *not*

"accounted for by restating or retrospectively adjusting amounts reported in financial

statements of prior periods . . . ."  FAS 154 "Accounting Changes and Error

---

[12] Defendants do not address the allegations plaintiffs make against the parties plaintiffs call the "Analyst Defendants" as there are no allegations that defendants adopted or endorsed the Analyst Defendants' statements.  *See, e.g. In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996) (refusing to hold corporation or its insiders liable for analysts' forecasts or projections).  Defendants note, however, that plaintiffs' assertion that the Analyst Defendants "clearly had access to all the information [they] needed to make a reasonable recommendation" (¶43) means that the information was publicly disclosed, and thus by definition plaintiffs' claims are outside the realm of Rule 10b-5.

Corrections" at ¶19 (Appendix, Tab 18 at 253). Second, PCB is not alleged to have actually said that its first quarter reserves were "conservative." That characterization is just plaintiffs' spin.[13] Reserves are supposed to represent management's best assessment of future losses in light of information then known or considered likely to be true. There are no facts alleged in the Complaint about information then known to defendants that they deliberately ignored, or of "red flags" that were willfully discounted, or of any other factor courts have looked to in concluding that a case should survive a motion to dismiss.

The remaining allegedly false statements follow a similar pattern. Plaintiffs assert in paragraph 58 that defendants' statement that, "We continue to maintain a strong allowance for loan losses which we believe will enable us to absorb losses in the portfolio as the recession continues" was false because in plaintiffs' view, the $141 million in accumulated loan loss reserves as of that date was not "strong." But the *only* reason why plaintiffs assert that the reserve was not "strong" is because additional reserves were taken three months later. This is plainly insufficient under the Reform Act. *See Novastar*, 2008 WL 2354367, at *3 ("[T]he Company may have changed or even weakened its internal controls or underwriting standards, but this does not mean that those controls or standards were not 'strong' or 'effective' as described in the Company's public statements.").

In paragraph 61 plaintiffs assert that the defendants' statement in paragraph 27 were false because defendants allegedly had not taken steps to "mitigate the risk going forward," again based solely on the subsequent increase in reserves. But the statement quoted in paragraph 27 outlined six specific steps the Company was taking to "mitigate the risk going forward." Plaintiffs do not allege that these steps were not taken, or that they did not have a role in mitigating future risk. In fact, the most reasonable inference that arises from the Complaint is that those steps did play such a role, as they describe things like restricting residential construction underwriting,

---

[13] Paragraph 64 of the Complaint makes the same unsubstantiated assertion.

1  reducing commercial real estate concentration, and the establishment of a board of

2  directors level loan committee to oversee concentration and problem loan resolution.

3  ¶27.  Obviously, PCB could only take steps to "mitigate" future risk, not to eliminate

4  it, and in a fundamental way, understanding that difference is at the heart of

5  understanding what is wrong with plaintiffs' Complaint.

6      Similarly, the assertion in paragraph 62 that the statement in paragraph 28 that

7  "'[t]he deterioration occurred in loans that were already in the non-performing

8  category entering the [first] quarter' *told investors* that new inflows were unlikely in

9  the second quarter" (¶62, emphasis added), in fact "told" them nothing of the kind.

10  *See In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1379 (N.D. Cal.

11  1995) ("statements of historic fact did not convey a misleading impression by

12  implying similar success for the future") (citing *In re Convergent Tech. Sec. Litig.*,

13  948 F.2d 507, 513 (9th Cir. 1991)).[14]

14      In paragraph 63 plaintiffs refer to defendants' statements that "[t]he provision

15  we recorded this quarter has kept our core bank allowance for loan losses at a very

16  high level" and assert this was false merely because a subsequent reserve was

17  recorded.  But the statement quoted actually said quite a bit more.  It stated that loan

18  allowances were almost 2.5% of total loans, and that approximately 90% of the

19  allowance related to loans which were not then considered impaired.  ¶29.  These

20  factual assertions are not alleged by plaintiffs to be false.  Nor do plaintiffs attempt to

21  compare PCB's allowance for loan losses during this time period with its industry

22  peers, and for good reason, because PCB's reserves were either in line with or

23

24  ───────────

[14] Plaintiffs also point to Mr. Leis' April 30, 2009 statement that "[w]e did not see

25  any meaningful new inflows of residential construction loans into non-performing

this [first] quarter" (¶28), and claim that this was "materially false and misleading

26  because . . . the Company did in fact have 'meaningful new inflows of residential

construction loans [moving] into non-performing' in the *second quarter*."  ¶62

27  (emphasis added).  In other words, plaintiffs are alleging that Leis' description of

historical first quarter results was false because his statements did not anticipate

28  what would happen in the second quarter.  This has never been the law.

1  exceeded that of comparable companies.[15]

2      Finally, in paragraph 65 plaintiffs refer to Mr. Leis' statement that the

3  "residential home builder portfolio has been reviewed, examined and pretty much

4  entirely classified" and say this was "false and misleading because . . . the *first*

5  *quarter* loss provision was not sufficient to render *second quarter* exposures 'entirely

6  classified.'" ¶65 (emphasis added). However, Mr. Leis never said that the first

7  quarter reserves rendered *second quarter* exposures "entirely classified." In fact,

8  PCB's Chief Credit Officer stated immediately thereafter that "*hopefully going*

9  *forward we won't see the same deterioration,*" ¶30 (emphasis added), suggesting the

10  possibility that in fact one could.

11      Each of these allegations fails individually to plead a false and misleading

12  statement with the particularity required by the statute. Viewed collectively they fare

13  no better. Defendants made no guarantees, but instead used terms like "hopefully"

14  and "we believe" to express the modestly optimistic view that going forward things

15  would be "relatively manageable."[16] Such statements of optimism have long been

16  held to be inactionable. *See Coble v. Broadvision, Inc.*, 2002 WL 31093589, at *1

17  (N.D. Cal. Sept. 11, 2002) (holding nonactionable the statement, "[w]e firmly believe

18  BroadVision is currently very well positioned not just to survive in this challenging

19  environment, but to thrive . . . when this economic downturn is over"); *In re Software*

20

---

[15] Based on judicially noticeable data provided by the Federal Deposit Insurance
Corporation, in Q1 09, PCB had a coverage ratio of 55% compared to a coverage
ratio of 53% for its peer group. *See* RJN, Ex. K; Declaration of Jason L. Krajcer
("Krajcer Decl.") ¶3, Ex. B. In Q2 09, PCB had a coverage ratio of almost 80%
compared to a coverage ratio of 49% for its peer group. *See* RJN, Ex. L; Krajcer
Decl. ¶4, Ex. C.

[16] *See, e.g.,* ¶26 ("we *believe* [these reserves] will enable us to absorb losses in the
portfolio as the recession continues"); ¶30 (Porter: "[T]he marks we have taken now
are very current marks and *hopefully* going forward we won't see the same
deterioration . . . .") (emphasis added); ¶32 (Leis: "[W]e have not seen the
delinquency metrics really be too negative *at this point*. I thin[k] it's been *relatively
manageable*.") (emphasis added); & ¶34 (Form 10-Q filed on May 11, 2009:
"Management *believes* that the continued increase in [allowance for loan losses] will
*better position* the Company to manage anticipated loan losses throughout the
*forecasted prolonged downturn impacting all of the Company's loan portfolios*.")
(emphasis added).

1  *Publ'g Sec. Litig.*, 1994 WL 261365, at *5 (N.D. Cal. Feb. 2, 1994) (statement

2  "[o]ver the next year, we expect market conditions to be extremely competitive, but

3  we believe we are prepared for the challenge" was nonactionable).

4  **IV.    THE COMPLAINT FAILS TO PLEAD PARTICULARIZED FACTS
       GIVING RISE TO A "COGENT AND COMPELLING" INFERENCE**

5  **OF SCIENTER**

6         The Ninth Circuit has interpreted the Reform Act as requiring that plaintiffs

7  "'plead, in great detail facts that constitute strong circumstantial evidence of

8  *deliberately reckless* or conscious misconduct.'" *IndyMac*, WL 4591930, at *2

9  (quoting *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).[17]  In

10  order to adequately plead deliberate recklessness, a plaintiff "'must state *specific facts*

11  indicating no less than a degree of recklessness that strongly suggests actual intent.'"

12  *Metzler*, 540 F.3d at 1066 (quoting *Silicon Graphics*, 183 F.3d at 979).  Under

13  *Tellabs*, a complaint will survive a motion to dismiss "only if a reasonable person

14  would deem the inference of scienter cogent and at least as compelling as any

15  opposing inference one could draw from the facts alleged."  551 U.S. at 324.

16         The primary problem with plaintiffs' Complaint is that it offers no rational

17  theory, much less a "cogent and compelling" one, as to why defendants would

18  deliberately lie about reserves in the first quarter of 2009, only to correct that

19  statement three months later.

20         Plaintiffs do not allege insider trading.  Defendant Leis, the CEO, made *no*

21  *trades* during the alleged class period, and defendant Porter, EVP of Credit and Risk

22  Management, made one small trade comprised of 126 shares, or 1.4% of his direct

23  holdings.  *See* RJN, Ex. N at 77.  Under Ninth Circuit law, insider trading is only

24  deemed to be probative of scienter when the amounts involved and timing of the trade

25  are determined to be "unusual" or "suspicious."  *See, e.g.*, *Ronconi*, 253 F.3d at 435

26

27  _____
   [17] Plaintiffs' Complaint consistently alleges only ordinary "recklessness" which is
   not the Ninth Circuit standard.  *See, e.g.*, ¶2 ("defendants knew or recklessly failed

28  to know") & ¶82 ("defendants . . . were reckless in failing to obtain such
   knowledge").

1   (no inference of scienter where defendant sold 17% of his shares). Defendants'

2   retention of all or virtually all of their shares during the time when they were

3   supposedly deliberately disseminating false information negates any reasonable

4   inference of scienter. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407,

5   1424-25 (9th Cir. 1994) ("[I]f, as Plaintiffs allege, the Officers knew [the company]

6   was heading for financial disaster, they probably would have bailed out of their

7   substantial holdings. Each of the Officer Defendants, by contrast, held onto most of

8   their [company] stock and incurred the same large losses as did the Plaintiffs

9   themselves.") (internal citations omitted); *In re FVC.com Sec. Litig.*, 136 F. Supp. 2d

10  1031, 1039 (N.D. Cal. 2000) (officer's failure to sell stock negates any inference of

11  scienter); *IndyMac*, 2007 WL 4591930, at *4 ("the individual Defendants retained

12  such a large percentage of their stock that an inference of scienter is functionally

13  negated"). As one court observed, it is a "nonsensical premise" that defendants

14  would "conceal facts and misrepresent information [without] enjoying the fruits of

15  their fraud by selling their stock." *Thornton v. Micrografx, Inc.*, 878 F. Supp. 931,

16  938 (N.D. Tex. 1995).

17       Plaintiffs also do not plead any allegations of the Company using its stock as

18  currency in pursuing acquisitions, or that there was any other motivation for

19  defendants to deliberately understate first quarter reserves. Thus, plaintiffs would

20  have the Court accept the premise that the defendants deliberately understated first

21  quarter reserves, notwithstanding the fact that they gained nothing by doing so. This

22  implausible theory fails to satisfy the statutory scienter pleading requirement as

23  interpreted by *Tellabs* and *Silicon Graphics*.

24       Plaintiffs assert that the size of the additional reserve is evidence of scienter.

25  ¶69. However, while some cases suggest that the magnitude of an *accounting error*

26  can sometimes support an inference of scienter,[18] that case law is inapplicable here

---

27  [18] *See In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636-37 (E.D. Va.

28  2000) ([T]he greater the magnitude of a restatement or violation of GAAP, the more
    likely it is that such . . . violation was made consciously or recklessly . . . ."); *but see*

DEFENDANTS' MEMORANDUM ISO
MOTION TO DISMISS COMPLAINT
CASE NO. CV 09-6501 RGK (PLAX)

1   where PCB has not restated its financial statements, and plaintiffs do not even allege

2   that it should.  As the district court stated in *Novastar*:  "[I]t is noteworthy that

3   nobody – the SEC, Novastar's auditors, or anyone else – has suggested Novastar

4   should or must restate its financial reports. . . . Ultimately, Plaintiff fails to identify a

5   single false entry in the Company's financial statements, nor does he identify the

6   'truth' that should have been disclosed."  *Novastar*, 2008 WL 2354367, at *3.

7            Plaintiffs' Complaint essentially boils down to a criticism that management

8   should have increased its loan loss reserves earlier by a higher amount.  But that is a

9   classical description of fraud by hindsight.  *See id.* at *2 ("[T]he PSLRA's effort to

10  combat claims of 'fraud by hindsight' demonstrates a reluctance to countenance

11  claims that attach heightened importance to facts only when looking back at the

12  aftermath of misfortune.").[19]  At best, plaintiffs' claim is one for mismanagement, but

13  it has long been the case that such claims do not constitute securities fraud.  *See Santa*

14  *Fe Indus. v. Green*, 430 U.S. 462, 479 (1977) ("Congress by §10(b) did not seek to

15  regulate transactions which constitute no more than internal corporate

16  mismanagement") (internal citation omitted).  *Novastar*, 2008 WL 2354367, at *4

17  ("[B]ad decisions do not constitute securities fraud. . . . They may constitute

18  negligence; they may constitute breach of fiduciary duty; they may constitute a claim

19  for mismanagement – but they do not constitute fraud.").

20

21

22  *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) ("To travel from magnitude of fraud to evidence of scienter, the court must

23  blend hindsight, speculation and conjecture to forge a tenuous chain of inferences . . . ."), *aff'd sub nom. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d

24  385 (9th Cir. 2002); *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) ("Allowing an inference of scienter based on the magnitude of fraud 'would eviscerate the

25  principle that accounting errors alone cannot justify a finding of scienter.'").

26  [19] *See also Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) ("[T]he complaint is an example of alleging fraud by hindsight . . . . [P]laintiff has simply seized upon

27  disclosures made in later annual reports and alleged that they should have been made in earlier ones.") (Friendly, J.); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d

28  Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.").

## V.    THE COMPLAINT FAILS TO ADEQUATELY PLEAD LOSS CAUSATION

In order to adequately plead loss causation under Section 10(b), a plaintiff "must allege that the *practices* that the plaintiff contends are *fraudulent* were revealed to the market and *caused* the resulting losses . . . . as opposed to [the market] merely reacting to reports of the defendant's poor financial health generally." *Metzler*, 540 F.3d at 1063 (emphasis added).

In this case, plaintiffs allege that the "artificial inflation . . . *was removed* from the price of the Company's stock" (¶56, emphasis added) when the Company announced its second quarter results on July 30, 2009. However, *prior* to that July 30 disclosure, 92.7% of the Company's class period price decline had already occurred.[20] These are non-compensable losses under Rule 10b-5. *See, e.g.*, *Daou*, 411 F.3d at 1027 (losses incurred before adverse disclosures "cannot be considered causally related to [defendant's] allegedly fraudulent accounting methods"); *In re Teco Energy, Inc. Sec. Litig.*, 2006 WL 845161 (M.D. Fla. March 30, 2006) ("If a drop in stock price occurs before a defendant's fraud is revealed or the truth becomes known, the damages associated with the drop in stock price necessarily cannot be connected to the alleged fraud.") (citing *Daou*, 411 F.3d at 1026-27).

Moreover, the price decline that occurred after the July 30, 2009 disclosure amounted to only a modest and temporary dip. As plaintiffs point out, the closing stock price on July 30 after the supposed disclosure of the fraud was $2.26. However, as plaintiffs fail to point out (but as the Court may judicially notice), the closing stock price a week later on August 6 was $2.70 (higher than the pre-

---

[20] The Company's stock price had dropped from a closing price of $6.94 on April 30, 2009, the day the alleged class period began, to a closing price of $2.60 on July 29, the day before the supposed "truth" was revealed (¶55), the difference between which is $4.34. The difference between the April 30 price and the closing price after plaintiffs say the fraud was revealed is $4.68, and ratio of 4.34 to 4.68 is equal to 92.7%. The Company's stock prices are subject to judicial notice and may be considered in deciding a motion to dismiss. *See* RJN, Ex. V, Krajcer Decl., Ex. A (stock chart of Company's stock prices from April 30, 2009 to August 10, 2009).

1  disclosure closing price of $2.60 on July 29), and the price continued to rise until

2  August 10, when it closed at $3.18.[21]  A prompt price rebound following an adverse

3  disclosure undermines a plaintiff's allegation that the announcement revealed a fraud.

4  *See Metzler*, 540 F.3d at 1065 (noting that defendant's stock "quickly recovered from

5  the 10% drop that followed the *Financial Times* story").[22]

6       Plaintiffs have not pled any facts showing that the market's response to the

7  July 30, 2009 announcement was the reaction to a fraud, rather than the mere

8  disclosure of the Company's "poor financial health generally."  Plaintiffs do not point

9  to the statements of any analyst or other market observer accusing defendants of

10  fraud or of misstating the first quarter reserves.  Instead, the market's mild reaction

11  and prompt rebound indicates that the July 30 announcement merely confirmed much

12  of what the market already knew, as opposed to being viewed as the disclosure of a

13  fraud.  Accordingly, the Complaint should be dismissed pursuant to *Dura* and

14  *Metzler*.

15  **VI.  DEFENDANTS' STATEMENTS ARE PROTECTED BY THE
16  REFORM ACT'S STATUTORY SAFE HARBOR**

17       Shortly before the class period began, PCB filed its Form 10-K with the SEC

18  which specifically cautioned that "*The allowance for loan losses may not be adequate*

19  *to cover actual losses* . . . . Management *cannot guarantee* that the allowance for loan

20  losses *will not increase further* or that regulators will not require the Company to

21

22     [21] *See* RJN, Ex. V; Krajcer Decl., Ex. A.

23     [22] *See also Limantour v. Cray, Inc.*, 432 F. Supp. 2d 1129, 1162 (W.D. Wash. 2006) (dismissing claim regarding deferred tax asset on loss causation grounds when

24  price declined in response to adverse disclosure but recovered within two days); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1339 (S.D. Fla. 2004) (plaintiffs

25  failed to adequately plead loss causation where majority of class period price decline occurred prior to the truth being revealed and where stock "quickly rebounded"

26  following partial disclosure:  "Plaintiffs have failed to allege with specificity that Defendants' fraud, as opposed to general market conditions, caused the stock price

27  to decline."); *In re ConAgra Foods, Inc., Sec. Litig.*, 2006 WL 3247199, at *5 (D. Neb. Nov. 7, 2006) (expressing doubt that plaintiffs adequately pled loss causation

28  where stock price fell following revelation of accounting improprieties, but stock price recovered within four days).

     - 17 -      DEFENDANTS' MEMORANDUM ISO
MOTION TO DISMISS COMPLAINT
CASE NO. CV 09-6501 RGK (PLAx)

1   increase this allowance." *See* RJN, Ex. Q at 197 (emphasis added).  Subsequent

2   public filings during the class period repeatedly warned of the risk from the

3   "deterioration in general economic conditions, internationally, nationally or in

4   California" (RJN, Ex. T (Form 8-K filed on April 30, 3009)) and referred back to the

5   detailed risk disclosures in the above-referenced Form 10-K.[23]  Taken together, these

6   constituted detailed warnings of the precise risks that plaintiffs allege came to pass.

7   *See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,

8   353 F.3d 1125, 1132 (9th Cir. 2004) (cautionary language sufficient where company

9   disclaimed certainty and referred to cautionary statements in defendant's Form 10-K).

10        When Congress enacted the Reform Act to redress abusive securities

11  litigation, it created a statutory "safe harbor" provision to loosen the "muzzling

12  effect" of potential liability for forward-looking statements.  H.R. Rep. No. 369, at

13  42 (1995) (Conf. Rep.).  Pursuant to the statutory safe harbor, forward-looking

14  statements accompanied by meaningful cautionary language are not actionable as a

15  matter of law.  *See* 15 U.S.C. §78u-5(c)(1)(A)(i).

16        The statutory safe harbor prescribes two independent bases upon which a

17  court must dismiss.  *See In re SeeBeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d

18  1150, 1164 (C.D. Cal. 2003) (The "two prongs of the safe harbor provision are taken

19  to be independent, alternative means by which a defendant may insulate itself from

20  liability.").  Under the first prong, dismissal is required where a forward-looking

21  statement is accompanied by meaningful cautionary language.  *See* 15 U.S.C. §78u-

22  5(c)(1)(A).  Where "a forward-looking statement is accompanied by meaningful

23

24   [23] In addition to the warnings about possible increases of loan loss reserves,
     PCB's Form 10-K also warned about the uncertainty and risks endemic to its
25   industry such as the "[i]nability of the Company's borrowers to make timely
     repayments of their loans, or *decreases in value of real estate collateral* securing the
26   payment of such loans . . . [which] could result in *increased delinquencies*,
     foreclosures and customer bankruptcies . . . ." RJN, Ex. Q at 195 (emphasis added);
27   *see also id.* at 195 ("In view of the concentration of the Bank's operations and the
     collateral securing the loan portfolio in California, as well as the concentration in
28   commercial real estate loans, we may be particularly susceptible to the adverse
     economic condition in the state of California . . . .").

1  cautionary language," the inquiry ends and "a court need not turn to subsection (B)

2  and examine whether the plaintiff, nevertheless, has sufficiently alleged actual

3  knowledge." *SeeBeyond*, 266 F. Supp. at 1164.  Alternatively, if the cautionary

4  language is determined to be insufficient, a dismissal is still required if a plaintiff

5  fails to "prove" that the person making the statement made it with contemporaneous

6  "actual knowledge" of its falsity.  15 U.S.C. §78u-5(c)(1)(B).

7        Here, plaintiffs allege that defendants made false or misleading forward-

8  looking statements regarding the sufficiency of PCB's reserves to absorb future loan

9  losses.  While plaintiffs studiously avoid mentioning PCB's detailed risk factor

10 disclosures that accompanied the statements quoted in the Complaint, the Reform Act

11 requires that on a "motion to dismiss . . . the court *shall* consider any statement cited

12 in the complaint and any cautionary statement accompanying the forward-looking

13 statement, which are not subject to material dispute, *cited by the defendant*." 15

14 U.S.C. §78u-5(e) (emphasis added).

15        While the Reform Act's legislative history makes it clear that to gain the

16 protection of the statutory safe harbor a defendant need not identify the specific risks

17 which actually come to pass,[24] what is striking in this case is that PCB's specific

18 warnings did address plaintiffs' major points of contention, and therefore more than

19 satisfied the requirements of the statutory safe harbor.  *See, e.g., ESS Tech., Inc. Sec.*

20 *Litig.*, 2004 WL 3030058, at *9 (N.D. Cal. Dec. 1, 2004) (company's Form 10-K's

21 "extensive discussion" about "increased pricing pressure" and "strong competition"

22 adequately identified specific risks).[25]

23

24

---

[24] *See* H.R. Rep. No. 369, at 44 (Conf. Rep.) ("[The] Committee expects that the
25 cautionary statements identify important factors . . . but not all factors.  Failure to
include the particular factor that ultimately causes the forward-looking statement not
26 to come true will not mean that the statement is not protected by the safe harbor.").

[25] *See also Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1381-82 (N.D.
27 Ga. 2004) (cautionary language barred claims pursuant to safe harbor provisions of
Reform Act); *Coble*, 2002 WL 31093589, at *9-10; (similar); *In re Azurix Corp.*
28 *Sec. Litig.*, 198 F. Supp. 2d 862, 884-85 (S.D. Tex. 2002) (similar).

1    Although defendants have a complete defense pursuant to the first prong of

2 the statutory safe-harbor, it should also be noted that they are equally protected under

3 the second prong as well. Plaintiffs fail to allege any particularized facts establishing

4 that defendants made forward-looking statements with contemporaneous "actual

5 knowledge" of falsity. *See* 15 U.S.C. §78u-5(c)(1)(B). Nothing in plaintiffs'

6 Complaint goes to the core issue of what defendants "knew" when they made their

7 forward-looking statements, and what information they supposedly had that they

8 deliberately ignored. Plaintiffs cannot base their assertion of actual knowledge on

9 their generalized assertions of defendants' "receipt of information reflecting the true

10 facts regarding PCBC . . . and/or their associations with the Company that made them

11 privy to confidential proprietary information . . . ." ¶68. *See, e.g.*, *Silicon Graphics*,

12 183 F.3d at 985 (plaintiffs' reliance on alleged "reports" which supposedly

13 undermined defendants' statements deemed inadequate, because plaintiffs should

14 have been able to plead "countless specifics" from those reports if they existed).

**VII.    PLAINTIFFS' SECTION 20(a) CLAIM MUST FAIL**

16    Because plaintiffs have failed to state a valid primary claim for a violation of

17 Section 10(b) or Rule 10b-5, there can be no control person liability under

18 Section 20(a) as a matter of law. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189

19 F.3d 971, 978 (9th Cir. 1999).

**VIII. <u>CONCLUSION</u>**

21    For the foregoing reasons, plaintiffs' Complaint should be dismissed.

22 Dated:  December 18, 2009          Respectfully submitted,

23                                   ORRICK, HERRINGTON & SUTCLIFFE LLP

24

25                                   By:_____*/s/ Daniel J. Tyukody, Jr.*_____

26                                         Daniel J. Tyukody, Jr.

27                                   Attorneys for Defendants Pacific Capital

28                                   Bancorp, George Leis and David Porter