1  DANIEL J. TYUKODY (SBN 123323)
   *dtyukody@orrick.com*
2  MICHAEL C. TU (SBN 186793)
   *mtu@orrick.com*
3  TEODORA E.MANOLOVA (SBN 233333)
   *tmanolova@orrick.com*
4  JASON L. KRAJCER (SBN 234235)
   *jkrajcer@orrick.com*
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 S. Figueroa Street, Suite 3200
6  Los Angeles, California 90017
   Telephone:    213-629-2020
7  Facsimile:    213-612-2499

8  Attorneys for Defendants
   Pacific Capital Bancorp,
9  George Leis and David Porter

10

11              **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                   **WESTERN DIVISION**

14

| 15 | In re PACIFIC CAPITAL BANCORP SECURITIES LITIGATION | Case No. CV 09-6501 RGK (PLAx) |
|---|---|---|
| 16 | | **CLASS ACTION** |
| 17 | This Document Relates To: | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS *SHOTKE* COMPLAINT** |
| 18 | ALL ACTIONS | |
| 19 | | |
| 20 | | Date:       February 1, 2010 |
| 21 | | Time:       9:00 a.m. Ctrm.:      Hon. R. Gary Klausner |
| 22 | | Courtroom 850 Roybal Federal Courthouse |
| 23 | | |
| 24 | | |

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................ 1

II.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD THE EXISTENCE
       OF A FALSE STATEMENT ........................................................ 2

II.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD SCIENTER ................. 5

III.   PLAINTIFFS FAIL TO ADEQUATELY PLEAD LOSS
       CAUSATION ............................................................................ 6

IV.    DEFENDANTS' ALLEGED MISSTATEMENTS ARE
       PROTECTED BY THE STATUTORY SAFE HARBOR ...................... 9

V.     CONCLUSION .......................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Page**

3

4
*In re Apollo Group, Inc. Sec. Litig.,*
2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ........................................ 8

5
*In re Ashworth, Inc. Sec. Litig.,*
2000 WL 33176041 (S.D. Cal. July 18, 2000) .................................... 4

6

7
*Atlas v. Accredited Home Lenders Holding Co.,*
556 F. Supp. 2d 1142 (S.D. Cal. 2008) ............................................. 4

8
*DSAM Global Value Fund v. Altris Software, Inc.,*
288 F.3d 385 (9th Cir. 2002) ............................................................ 5

9

10
*In re Daou Sys., Inc.,*
411 F.3d 1006 (9th Cir. 2005) ....................................................... 6, 7

11
*Denny v. Barber,*
576 F.2d 465 (2d Cir. 1978) ............................................................. 2

12

13
*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000) .......................................................... 4

14
*In re K-tel Int'l, Inc. Sec. Litig.,*
300 F.3d 881 (8th Cir. 2002) ............................................................ 6

15

16
*Lentell v. Merrill Lynch & Co., Inc.,*
396 F.3d 161 (2d Cir. 2005) ............................................................. 7

17
*Lewis v. Straka,*
535 F. Supp. 2d 926 (E.D. Wis. 2008) ........................................... 4, 5

18

19
*In re Maxim Integrated Products, Inc. Sec. Litig.,*
639 F. Supp. 2d 1038 (N.D. Cal. 2009) ............................................. 7

20
*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
540 F.3d 1049 (9th Cir. 2008) .................................................... 6, 7, 9

21

22
*In re 2007 Novastar Fin., Inc. Sec. Litig.,*
2008 WL 2354367 (W.D. Mo. 2008) ................................................. 3

23
*In re Omnicom Group, Inc. Sec. Litig.,*
541 F. Supp. 2d 546 (S.D.N.Y. 2008) ............................................... 8

24

25
*In re Pacific Gateway Exch., Inc., Sec. Litig.,*
169 F. Supp. 2d 1160 (N.D. Cal. 2001) ............................................. 6

26
*In re Software Toolworks Inc. Sec. Litig.,*
50 F.3d 615 (9th Cir. 1995) .............................................................. 6

27

28
*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
551 U.S. 308 (2007) ......................................................................... 5

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3

*Tripp v. IndyMac Fin. Inc.*,
   2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) .................................................... 3

*In re Wells Fargo Sec. Litig.*,
   12 F.3d 922 (9th Cir. 1993) ................................................................................ 4

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) .............................................................................. 5

4
5
6
7
8

# FEDERAL STATUTES

9

15 U.S.C. §78u-4(b)(1) .............................................................................................. 2

15 U.S.C. §78u-5(i)(1)(A) ........................................................................................ 10

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    I.    **INTRODUCTION**

2           Plaintiffs' untimely Opposition brief ("Opp.")[1] only supports the case for this

3    action to be dismissed with prejudice.  The *Shotke* complaint at issue here is

4    virtually identical to the *Jurkowitz* complaint (where the Court has taken defendants'

5    motion to dismiss under submission), except for three additional statements in

6    *Shotke* found at paragraphs 37-39.  Plaintiffs forced the issue of the Court deciding

7    *Shotke* separately, rather than letting the Court's decision in *Jurkowitz* govern both

8    cases, asserting that *Shotke* provided some of the additional facts that they would

9    provide in an amended complaint, should the Court dismiss *Jurkowitz*.  In fact these

10   "new" factual allegations only demonstrate that allowing plaintiffs leave to amend

11   either complaint would be nothing but a waste of time.

12          What is "new" in *Shotke* are three statements, none of which are alleged to

13   be false, and two of which are outside the class period.  The one class period

14   statement is by PCB's President, George Leis, in connection with the suspension of

15   dividends and interest payments on certain notes, stating that "[w]e believe the

16   actions we have announced today are the most prudent course of action and will

17   improve our flexibility to consider other actions that may need to be taken in order

18   to achieve our targeted capital ratios."  *See* Compl. ¶37.  Not only is this statement

19   not alleged to be false, it is also quite obviously true.  Clearly, suspending these

20   payments helped PCB's capital ratios.  The two other "new" statements come from

21   periodicals published weeks or months after the end of the class period, and state

22   simply that PCB received funds from the government's Trouble Asset Relief

23   Program ("TARP") which PCB's management said "'obviously helps us'" and

24   "'helps our capital ratios.'"  Compl. ¶¶38-39; *see also* Opp. at 4.  These statements

25   are also quite obviously true, and in any event have nothing to do with supposed

26   _____

27   [1] Under the new Central District Local Rule 7-9, effective January 1, 2010,
     plaintiffs' Opposition should have been filed on January 11, 2010, which is twenty-
     one days before the date designated for hearing of the motion on February 1, 2010.

28   C.D. Cal. R. 7-9.  The Opposition was not filed until January 15, 2010.

DEFENDANTS' REPLY MEMORANDUM ISO
                                                                                                       MOTION TO DISMISS COMPLAINT
                                                                                                       CASE NO. CV 09-6501 RGK (PLAX)

1   false statements concerning loan loss reserves.  If this is supposed to be illustrative

2   of what plaintiffs intend to deliver on a next round of pleading (assuming the Court

3   dismisses the current allegations) there is obviously no purposed served by

4   continuing this pointless drain on PCB's resources, and the Court should dismiss

5   both *Jurkowitz* and *Shotke* with prejudice.

6   **II.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD THE EXISTENCE**
**OF A FALSE STATEMENT**

7

8        Plaintiffs describe their Complaint as alleging that defendants "*knew* or

9   recklessly failed to know that the loan loss provision taken in the first quarter of

10  2009 was wholly inadequate . . . ."  Opp. at 1:19-20 (emphasis added).  The problem

11  is the Complaint never alleges *what* defendants knew, or *how* they knew it, or *how*

12  plaintiffs came by their knowledge of what defendants supposedly knew.  There is

13  no fact which plaintiffs say was deliberately overlooked, no document which

14  allegedly exposes defendants' statements to be a lie, and no witness is alleged to

15  exist who supports plaintiffs' unsupported speculation.

16       The Reform Act requires plaintiffs to "specify each statement alleged to have

17  been misleading" and provide "the reason or reasons why the statement is

18  misleading."  15 U.S.C. §78u-4(b)(1).  Defendants discussed each of the allegedly

19  false statements in their opening brief.  In trying to defend the sufficiency of their

20  allegations, plaintiffs only make matters worse, as they convincingly demonstrate

21  that their case is founded exclusively on "fraud by hindsight" allegations.[2]

22       For example, plaintiffs argue that defendants' statements concerning specific

23  steps taken "to mitigate the risk going forward" (¶27) were false because the steps

24  "'were not sufficient'[.]"  Opp. at 10:2-6 (quoting ¶62).  In plaintiffs' view, unless

25  the steps undertaken somehow eliminated the need for a second reserve, defendants

26  _____

27  [2] *See, e.g.*, *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.)
("[T]he complaint is an example of alleging fraud by hindsight . . . . [P]laintiff has
28  simply seized upon disclosures made in later annual reports and alleged that they
should have been made in earlier ones.").

1    lied.  However, defendants never said that the steps taken would be "sufficient" to

2    eliminate all future risks, merely that they were taking steps "*to mitigate* the risk

3    going forward."  ¶27 (emphasis added).

4          In trying to defend the adequacy of paragraph 59 of their Complaint, where

5    plaintiffs improperly lump together a whole series of statements and say they were

6    all false, plaintiffs resort to a meaningless tautology.  Plaintiffs say that PCB's

7    statement that the "increase in loan loss reserves for the second quarter, was 'a *more*

8    conservative methodology' . . . clearly indicates that the Company's previous

9    methodology was not *as* conservative."  Opp. at 9:27-10:1 (emphasis added).  That

10    is tautologically true, but it has nothing to do with fraud.  What would be indicative

11    of fraud would be well-pled facts demonstrating that when defendants set the first

12    quarter reserves they knew certain *facts* which revealed to them that the reserves

13    would be inadequate.  But it is exactly because plaintiffs do not have any such facts

14    to plead that they have to resort to these meaningless linguistic sleights of hand.

15          Defendants are not alleged to have even said that the first quarter reserve was

16    "conservative."  That is just plaintiffs' unsubstantiated "spin" on what was actually

17    said, and the judicially noticeable facts show that PCB's loan loss reserves were as

18    strong or stronger than those of its peers.  *See* Opening Memo at 12 n.15.  Finally,

19    the case law is clear that the mere fact that loan loss reserves are later increased does

20    not mean that the original reserves were wrong.  *See In re 2007 Novastar Fin., Inc.*

21    *Sec. Litig.*, 2008 WL 2354367, at *3 (W.D. Mo. 2008) ("The Company may have

22    incorrectly believed it had adequate reserves, but the mere fact that those reserves

23    eventually proved to be inadequate does not mean a false statement was made."),

24    *aff'd*, 579 F.3d 878 (8th Cir. 2009).[3]

25          In order to skirt the obvious deficiencies in their pleading, plaintiffs rely on

26    ─────────────
      [3] *Accord Tripp v. IndyMac Fin. Inc.*, 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29,
27    2007) ("an even stronger inference is that Defendants were simply unable to shield
      themselves as effectively as they anticipated from the drastic change in the housing
28    and mortgage markets and, once that inability became evident, IndyMac's financials
      were changed accordingly.").

the out of date *Wells Fargo*[4] case, which plaintiffs say in a footnote was "[s]uperseded by statute on other grounds," but which in fact was superseded on the very point plaintiffs cite it for, namely the pleading standard in a case alleging inadequate loan loss reserves. *See, e.g.*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063 (9th Cir. 2000) (the Reform Act "erected a more stringent pleading standard than previous Ninth Circuit case law required" under *Wells Fargo*); *In re Ashworth, Inc. Sec. Litig.*, 2000 WL 33176041, at *6 (S.D. Cal. July 18, 2000) ("*Wells Fargo* [is a] pre-Reform Act case[] and [is] therefore inapplicable").

Moreover, the Complaint in this case is so inadequate that it is doubtful that it could satisfy even the pre-Reform Act pleading standard applied in *Wells Fargo*. In *Wells Fargo* the plaintiffs alleged that the bank deliberately failed to include in its reserves specific problem loans to specifically identified borrowers. *See Wells Fargo*, 12 F.3d at 926-27. There is nothing remotely similar alleged here.

In purported support of their case, plaintiffs only cite two post-Reform Act cases dealing with loan loss reserves – *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1150 (S.D. Cal. 2008) and *Lewis v. Straka*, 535 F. Supp. 2d 926 (E.D. Wis. 2008), both of which involved factual allegations that were far more particularized. In *Atlas*, the court found that allegations concerning inadequate reserves were sufficient where the lender *decreased* reserves despite increasing delinquencies, and several confidential witnesses stated with specificity that individual defendants ordered deviations from the company's underwriting policy. 556 F. Supp. 2d at 1156. The company's auditor refused to approve the company's financial statements and then a subsequent auditor required the reserves to be retroactively increased. *Id.* at 1156-57. In direct contrast, in this case PCB *increased* reserves during a period of great economic stress, and plaintiffs have not pled the existence of any fact demonstrating that the defendants knew that the first quarter reserve was inadequate.

---

[4] *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993).

1  *Lewis* is even farther afield.  In *Lewis*, a non-public company that operated a

2  number of banks made numerous false statements, including specific accounting

3  misstatements concerning net income and the ratio of non-performing assets, all of

4  which required a major restatement, and failed to disclose $200 million in

5  undisclosed problem loans at a subsidiary.  535 F. Supp. 2d at 929.  The CEO also

6  engaged in a pattern of self-dealing loans, and the court found that he had an

7  incentive to make misstatements in order to take the company public.  *Id.* at 930.

8  ## III.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD SCIENTER

9       Regarding scienter, plaintiffs do not even attempt to argue that the

10  Complaint satisfies the "cogent and compelling" standard articulated by the

11  Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323

12  (2007).  Although plaintiffs expressly say that they are *not* relying upon insider sales

13  to establish scienter,[5] they never go on to say what it is they *are* relying upon, other

14  than the supposed "sheer magnitude" of the second quarter loan loss reserve.  Opp.

15  at 10:19.  However, while a minority of cases suggest that the magnitude *of an*

16  *accounting error* can support an inference of scienter,[6] that case law is simply

17  inapplicable here as plaintiffs have not alleged an accounting error.

18       If plaintiffs believe that their Complaint should be read to imply an

19  accounting error, it still fails to meet the standards for pleading either a violation of

20  Generally Accepted Accounting Principles ("GAAP") or scienter in connection with

21  such a violation.  Under Ninth Circuit law, "even deliberate violations of [GAAP],

22  without more, do not amount to fraud."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d

23  1407, 1426 (9th Cir. 1994).[7]  In order to plead a strong inference of scienter in

24  

25     [5] Opp. at 11:2-3 ("plaintiff makes *no* claim that the PCB defendants' scienter is demonstrated by insider sales") (emphasis by plaintiffs).

26     [6] *See* Opening Memo. at 14-15 & n.18.  As noted in that brief, there is also

27  substantial contrary authority stating that the size of an accounting error by itself cannot support a strong inference of scienter.

28     [7] *Accord DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002).

1  connection with an accounting violation, plaintiffs must plead detailed facts

2  showing "how or when each defendant became aware of the allegedly improper

3  accounting practices" and "the extent of each defendant's contribution or

4  involvement." *In re Pacific Gateway Exch., Inc., Sec. Litig.*, 169 F. Supp. 2d 1160,

5  1167 (N.D. Cal. 2001).[8]  Assertions that defendants should have made different

6  estimates for contingencies are particularly suspect as speculative. *In re K-tel Int'l,*

7  *Inc. Sec. Litig.*, 300 F.3d 881, 893 (8th Cir. 2002).

8        Plaintiffs offer no rational reason, much less a "cogent and compelling" one,

9  why defendants would have deliberately understated first quarter reserves only to

10  reveal the "truth" three months later. Like the defendants in *IndyMac* and a host of

11  other cases where courts dismissed similar sounding complaints,[9] defendants lost

12  significant money by *not* bailing out of PCB's stock, despite their purported

13  knowledge of an ongoing fraud that they themselves would "reveal" to the market

14  approximately 90 days later. Plaintiffs have no answer to the fundamental question

15  of why would anyone do such a thing.

16  **IV.   PLAINTIFFS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION**

17        Plaintiffs contend that loss causation is a factual inquiry which needs to

18  await a jury's determination,[10] ignoring the fact that the two key Ninth Circuit

19  decisions on this issue – *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005)

20  and *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008)

21  – both resulted in either partial or complete victories for defendants on loss

22  causation grounds *at the pleading stage*. In order to adequately plead loss causation,

23  a plaintiff "must allege that the practices that the plaintiff contends are fraudulent

24  were revealed to the market and caused the resulting losses." *Metzler*, 540 F.3d at

25  _____

26  [8] *Accord In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 628 (9th Cir. 1995) (facts must be pled establishing each defendant's "egregious refusal to see the obvious, or to investigate the doubtful").

27  [9] *See* Opening Memo. at 13-14.

28  [10] *See* Opp. at 13-17.

—

1  1063 (citing *Daou*, 411 F.3d at 1012-27).  A pleading of loss causation must be

2  supported by well-pled facts, and the court "is not required to indulge unwarranted

3  inferences in order to save a complaint from dismissal." *Id.* at 1064-65.

4        Plaintiffs cite *Daou* for the proposition that a series of partial disclosures can

5  support a theory of loss causation,[11] but ignore *Daou*'s holding that all of a

6  company's price decline which occurred prior to the first corrective disclosure was

7  barred as a matter of law.  *See* 411 F.3d at 1027.  Plaintiffs do not even mention

8  *Metzler*, which affirmed the dismissal of a complaint in its entirety because neither

9  of two alleged disclosure events revealed a fraud to the market.  *Metzler*, 540 F.3d at

10  1064-65 (the first alleged disclosure event did not support loss causation where the

11  "stock recovered very shortly after [a] modest 10% drop," and the second alleged

12  disclosure event did not support loss causation where there was "a far more

13  plausible reason for the resulting drop in Corinthian's stock price – the company

14  failed to hit prior earnings estimates.").

15        Plaintiffs assert that there are two relevant disclosure events, namely PCB's

16  announcements on June 22, 2009 and July 30, 2009.  In fact, however, only the July

17  30, 2009 announcement could be considered to be a disclosure event.  Plaintiffs

18  incorrectly assert that "[t]he PCB Defendants do not seem to dispute that Plaintiff

19  has satisfied the loss causation requirement with respect to the decline in the price of

20  PCB stock that began on June 22, 2009" (Opp. at 15:10-12) following PCB's

21  announcement of a suspension of dividends and deferral of interest payments on

22  certain notes.  *See* Compl. ¶¶36 & 40.  However, the June 22, 2009 announcement

23  was not a "corrective disclosure" that had anything to do with what plaintiffs allege

24  was misstated.  *See, e.g.*, *In re Maxim Integrated Products, Inc. Sec. Litig.*, 639 F.

25  Supp. 2d 1038 (N.D. Cal. 2009) ("A corrective disclosure must reveal some aspect

26  of the alleged fraud to the market.").[12]  Plaintiffs do not allege that PCB made any

27        [11] *See* Opp. at 15.

28        [12] *Accord Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d

1   false statements concerning dividends or bond payments, which is what the June 22

2   statement was all about.

3          Plaintiffs' allegations against the Analyst Defendant further negates any

4   pleading of loss causation in connection with the June 22, 2009 announcement.

5   Plaintiffs' case against Sandler O'Neill is based on the proposition that PCB had

6   already disclosed to the market sufficient information such that any competent

7   analyst would have known that the suspension of dividends was a high probability:

8          [I]f prior to the rating upgrade, the Analyst Defendants had conducted
          the kinds of analysis that analysts typically – and admittedly – perform
9          in assessing the financial condition of a bank, they would have
          understood that Pacific Capital was not, at the time, a good investment.
10         . . . *[The analyst] acknowledged the regulatory rule that he should
          have been watching:  Bank dividends are imperiled if the payouts are
11         more than the banks have cumulatively earned over the last two years.*

12  ¶42 (emphasis added).

13         Indeed, plaintiffs argue that Sandler O'Neill was *reckless* in failing to

14  recognize that PCB would not be able to pay its dividends.[13]  Thus, as pled in the

15  Complaint, the June 22 announcement was not even "news" because the information

16  was already in the market.  *See In re Apollo Group, Inc. Sec. Litig.*, 2008 WL

17  3072731 (D. Ariz. Aug. 4, 2008) ("A disclosure that does not reveal anything new to

18  the market is, by definition, not corrective.").[14]  Accordingly, the June 22

19  announcement is completely irrelevant for loss causation purposes.[15]

20  Cir.2005) (to be "a corrective disclosure," the disclosure must "reveal to the market
    the falsity of the prior [representations]"); *In re Omnicom Group, Inc. Sec. Litig.*,
21  541 F. Supp. 2d 546, 551 (S.D.N.Y.2008) ("While a disclosure need not reflect
    every detail of an alleged fraud, it must reveal some aspect of it.").
22      [13] *See, e.g.*, ¶43 (analyst "clearly had access to all the information he needed to
    make a reasonable recommendation"); Plaintiff's Opposition to Analyst Defendant's
23  Motion to Dismiss ("Analyst Opp.") at 9:24-28 (analyst "admitted that he should
    have been reviewing the earnings progression and the effect that it would have on
24  PCB's ability to pay their dividends. . . . [T]he analysis which he failed to conduct
    was commonplace.").
25
        [14] *Accord In re Omnicom Group, Inc. Sec. Litig.*, 541 F.Supp.2d 546, 552
26  (S.D.N.Y. 2008) ("A recharacterization of previously disclosed facts cannot qualify
    as a corrective disclosure.").
27
        [15] Plaintiffs do not allege that there were any other relevant disclosures until the
28  July 30, 2009 disclosure.  Thus, at a minimum, the Court should hold, as the Ninth
    Circuit did in *Daou*, that all of the decline in PCB's stock price prior to the July 30,

DEFENDANTS' REPLY MEMORANDUM ISO
MOTION TO DISMISS COMPLAINT
CASE NO. CV 09-6501 RGK (PLAX)

1   With respect to the July 30, 2009 announcement of an increase in loan loss

2   reserves, plaintiffs do not offer any well-pled facts suggesting that this disclosure

3   revealed a fraud to the market. *Metzler* squarely holds that plaintiffs "must allege

4   that the practices that the plaintiff contends are fraudulent were revealed to the

5   market and caused the resulting losses . . . . as opposed to merely reacting to reports

6   of the defendant's poor financial health generally."  540 F.3d at 1063.

7   In determining whether a plaintiff's inference of fraud is warranted, courts

8   may consider whether the stock price quickly recovered after the supposed

9   disclosure of a fraud.  While plaintiffs argue that it is improper for courts to consider

10   such facts on a motion to dismiss, in fact the Ninth Circuit considered this factor in

11   *Metzler*, and the same factual circumstances exist here.  *See* 540 F.3d at 1059, 1065

12   (no loss causation where stock "rebounded within three trading days" and "quickly

13   recovered from the 10% drop").[16]

14   **V.   DEFENDANTS' ALLEGED MISSTATEMENTS ARE PROTECTED**

15   **BY THE STATUTORY SAFE HARBOR**

16   Plaintiffs argue that the Reform Act's "safe harbor" for forward-looking

17   statements does not apply to defendants' alleged misstatements, because they

18   supposedly were not forward-looking.  *See* Opp. at 18:2-6.  However, plaintiffs'

19   argument confuses the reserves themselves with defendants' statements concerning

20   the expected adequacy of those reserves.  Plaintiffs point to the statement in PCB's

21   April 30, 2009 press release which says, "We continue to maintain a strong

22   allowance for loan losses, which we believe will enable us to absorb losses in the

23   portfolio as the recession continues."  Opp. at 18:18-20.  Plaintiffs argue that "If that

24   was considered a forward looking statement, a line item of a current financial

25   statement *and an issuer's comment about the adequacy of that statement . . .* would

26

2009 disclosure was not caused by defendants' alleged misstatements.

27   [16] Other courts have similarly held that a quick price recovery negates the pleading
of loss causation on a motion to dismiss.  *See* Defendants' Memorandum in Support

28   of Motion to Dismiss at 17.

1  receive extra protection . . . . that could not have been intended by Congress."  Opp.

2  at 19:2-8 (emphasis added).  Plaintiffs have it all wrong.  A reserve is a financial

3  line item that is a statement of existing fact, which is not protected by the statutory

4  safe harbor, but statements of confidence regarding the anticipated adequacy of that

5  reserve *are* protected by the safe harbor.[17]

6        As set forth in defendants' opening brief, each of these forward-looking

7  statements was accompanied by meaningful cautionary language, a fact which

8  plaintiffs do not dispute.

9  **VI.    CONCLUSION**

10       The "amendments" which the *Shotke* complaint add to *Jurkowitz* are trivial

11  and irrelevant and demonstrate that a dismissal with prejudice would be most

12  appropriate.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.

13  1998) (the "general rule that parties are allowed to amend their pleadings . . . does

14  not extend to cases in which any amendment would be an exercise in futility, or

15  where the amended complaint would also be subject to dismissal.").

16  Dated:  January 19, 2010          Respectfully submitted,

17                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

18

19                                    By:_____*/s/ Daniel J. Tyukody, Jr.*_____
                                              Daniel J. Tyukody, Jr.
20
                                      Attorneys for Defendants Pacific Capital
21                                    Bancorp, George Leis and David Porter

22

23

24  _____
    [17] According to the statutory definition, a "forward-looking statement" includes, "a
25  statement containing a projection of revenues, income (including income loss),
    earnings (including earnings loss) . . . or other financial items," 15 U.S.C. §78u-
26  5(i)(1)(A), "a statement of future economic performance," 15 U.S.C. §78u-
    5(i)(1)(C), and "any statement of the assumptions underlying or relating to any
27  statement described in subparagraph (A), (B), or (C)."  15 U.S.C. §78u-5(i)(1)(D).
    Here, the defendants' alleged misstatements concerned the expected adequacy of
28  loan loss reserves to absorb future losses,  and they are thus covered under
    subparagraphs (A), (C), and (D).

DEFENDANTS' REPLY MEMORANDUM ISO
MOTION TO DISMISS COMPLAINT
CASE NO. CV 09-6501 RGK (PLAX)