KARL D. BELGUM (State Bar No. 122752)
kbelgum@nixonpeabody.com
STEPHANIE A. KARNAVAS (State Bar No. 255596)
skarnavas@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone: (415) 984-8200
Fax: (415) 984-8300

Attorneys for Defendant
Sandler O'Neill & Partners L.P.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **In re PACIFIC CAPITAL BANCORP SECURITIES LITIGATION**<br><br>**This Document Relates Only To:**<br><br>**Shotke v. Pacific Capital Bancorp, et al., Case No. CV09-7400** | Case No.: CV09-06501 RGK (PLAx)<br><br><u>CLASS ACTION</u><br><br>**REPLY MEMORANDUM OF SANDLER O'NEILL & PARTNERS L.P. IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing: February 1, 2010<br>Time: 9:00 a.m.<br>Court: Hon. R. Gary Klausner<br>Courtroom 850, Roybal |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................................... 1

    A. Plaintiffs Fail to Plead a Material False or Misleading Statement of Fact ................................................................................. 3

        1. Plaintiffs Fail to Allege that the Analyst Issued the Buy Without "Any Reasonable Basis" ....................................................... 3

        2. Plaintiffs fail to plead subjective falsity ........................................... 4

    B. Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter ................................................................................................ 5

        a. The failure to take "simple calculations and regulatory rules" into account ................................................. 6

        b. Failure to withdraw the Buy ..................................................... 7

        c. PCBC's later retention of Sandler O'Neill ............................. 7

    C. Plaintiffs Fail To Plead Loss Causation ....................................................... 8

    D. Failure to Downgrade ................................................................................ 10

II. CONCLUSION 10

# TABLE OF AUTHORITIES

Page(s)
**FEDERAL CASES**

*Alfus v. Pyramid Technology Corp.*,
  764 F. Supp. 598 (N.D. Cal. 1991) ...................................................................... 7

*DeMarco v. Lehman Bros., Inc.*,
  309 F. Supp. 2d 631 (S.D.N.Y. 2004) ................................................................. 5

*Fogorazzo v. Lehman Bros. Inc.*,
  341 F. Supp. 2d 274 (S.D.N.Y. 2004) ................................................................. 5

*In re Caere Corporate Securities Litigation*,
  857 F. Supp. 1054 ( N.D. Cal. 1993) .............................................................. 3, 9

*In re Credit Suisse First Boston Corp. (Agilent Technologies) Analyst Reports Securities Litigation*,
  431 F.3d 36 (1st Cir. 2005) .................................................................................. 4

*In re Salomon Analyst Level 3 Litig.*,
  350 F. Supp. 2d 477 (S.D.N.Y. 2004) ................................................................. 5

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ............................................................................... 6

*In re Verifone Securities Litigation*,
  784 F. Supp. 1471 (N.D. Cal. 1992) ............................................................... 3, 4

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................................. 9

*Swack v. Credit Suisse First Boston*,
  383 F. Supp. 2d 223 (D. Mass. 2004) ................................................................. 5

*Tellabs, Inc. v. Makor Issues and Right, Ltd.*
  551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed. 2d 179 (2007) .................................... 8

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(2) ........................................................................................... 5

# REPLY MEMORANDUM OF DEFENDANT
# SANDLER O'NEILL & PARTNERS L.P.

Defendant Sandler O'Neill & Partners, L.P. ("Sandler O'Neill") submits this reply memorandum in further support of its motion to dismiss the complaint in Shotke v. Pacific Capital Bancorp, No. 09-CV-7400 (the "Complaint").

## I.      INTRODUCTION

A.      Relationship of This Motion to Motion to Dismiss Jurkowitz case

The Shotke complaint is essentially identical to the Jurkowitz complaint except as to the dates of Mr. Shotke's purchases and sales. The lead plaintiffs' ("Plaintiffs") opposition to the present motion is also practically word for word the same as in Jurkowitz. (That motion remains under submission). Plaintiffs make no attempt to explain how Mr. Shotke's different purchase and sale dates should lead to a different result. In short, there is nothing new here. The result on this motion should be the same as for the Jurkowitz motion – the Complaint should be dismissed.

Moreover, Sandler O'Neill submits that at this stage the dismissal should be without leave to amend. The Shotke Complaint constitutes the second complaint filed in this action. Shotke (represented by the same law firm as Mr. Jurkowitz - Stull Stull & Brody) chose to repeat the allegations of the Jurkowitz complaint verbatim, rather than supplement or amend it. As such, the Shotke Complaint constitutes Plaintiffs' second bite at the apple. On December 7, 2009, the Court entered an order consolidating the Shotke and Jurkowitz cases under the In re Pacific Bancorp Securities Litigation caption, and on January 6, 2010, it entered an order naming members of the Rios and Pagano families co-lead plaintiffs, and approving their choice of counsel – the Stull firm and Glancy Binkow & Goldberg. The newly named lead plaintiffs chose to file an opposition to the motion to dismiss Shotke – in effect standing on the existing Complaint -- rather than file a new consolidated complaint. That was their third bite at the apple.

1	Finally, in their oppositions to the Jurkowitz motion and the present motion they
2 make boilerplate recitals regarding their desire to file an amended complaint if
3 dismissal is granted, but do not proffer a single new factual allegation or legal theory
4 which would justify such an amendment.  That was their fourth bite at the apple.

5	Given that both the lead plaintiffs and original named plaintiffs (represented by
6 the same law firm) have bypassed every opportunity to amend the Complaint or even
7 disclose what amendment they would offer, it is fair to dismiss the Jurkowitz and
8 Shotke complaints, and for those dismissals to be entered with prejudice.

9	**B.	Sandler O'Neill's Arguments on Motion to Dismiss Are Un-rebutted**

10	Because Plaintiffs' arguments in opposition are almost word for word the same as
11 the opposition to the Jurkowitz motion, the reply arguments below are the same – except
12 on page 8 where the different purchase and sale dates by Mr. Shotke are discussed.
13 Sandler O'Neill submits that there is no basis for a different result on this motion than in
14 Jurkowitz.  The fundamental weaknesses remain un-rebutted:

15	1.	The Complaint fails to plead a false opinion statement; it does not plead
16 that the Buy recommendation was made without any reasonable basis, or with
17 subjective falsity.

18	2.	The Complaint fails to plead facts supporting a strong inference of scienter.
19 A mere mistake does not support an inference of intent to defraud.

20	3.	The Complaint fails to plead loss causation; Plaintiffs plead four
21 inconsistent theories as to what was false and when the truth was disclosed.

22	4.	The fact that Sandler O'Neill did not downgrade PCBC to "Hold"
23 immediately after the June 22 announcement or June 27 article is not actionable because
24 there was no intent to defraud, and it hid nothing from the market.

25 ///
26 ///
27 ///
28 ///

## II. ARGUMENT

### A. Plaintiffs Fail to Plead a Material False or Misleading Statement of Fact

#### 1. Plaintiffs Fail to Allege that the Analyst Issued the Buy Recommendation Without "Any Reasonable Basis"

Plaintiffs' opposition admits two things: that (1) the law regarding falsity of opinion statements cited in Sandler O'Neill's motion applies to the Buy recommendation, and (2) Plaintiffs' only basis for alleging it was false is that "Sandler O'Neill had <u>no reasonable basis</u> for its 'Buy' recommendation." (Opp. Mem. p. 9:14-15.) (Emphasis added.) Plaintiffs do not allege that the analyst held a secret belief contrary to the Buy recommendation, or that he suppressed negative facts of which he was aware.

Plaintiffs' opposition fails on two grounds. First, it does not address the many bases for the Buy recommendation set forth in Mr. Deer's Company Note. Some of those bases were specifically highlighted in moving memorandum (SO Mem. p. 9-10) but Plaintiffs still assert that the Buy recommendation was "irrational":

> [T]he information contained in the report [Company Note] would have undoubtedly changed if the proper analysis on the Company's financials had been performed. It then follows that <u>the 'rationale' for the 'Buy' would no longer be rational</u>." (emphasis added) (Opp. Mem. p. 10:6-10.)

Plaintiffs' argument is that failure to include any fact which might have changed the analysis renders the recommendation "irrational." The law is clearly to the contrary: even omitting contrary information of which the writer is aware does not necessarily deprive a forecast or opinion of its "reasonable basis." *See In re Caere Corporate Securities Litigation*, 857 F. Supp. 1054, 1060 ( N.D. Cal. 1993) (A forecast doesn't lack a "reasonable basis" merely because other contrary forecasts also exist within the company); *In re Verifone Securities Litigation*, 784 F. Supp. 1471, 1487 (N.D. Cal. 1992) (same).

Second, Plaintiffs' argument relies heavily on a purported admission in the Beck article. Plaintiffs state: "there was clearly, <u>by Deer's own admission, no reasonable basis</u> supporting the recommendation." (Opp. Mem. p. 10:27-28.) A review of the entire article -- which should be considered by the Court on this pleading motion, for the reasons set forth in the moving papers (SO Mem. p. 3 n. 2)[1] -- reveals the contrary. In reality the article reports only two statements by the analyst. The article says that "Deer acknowledged in an interview that his upgrade was the wrong call." (Deer Decl. Ex. B, p. 10.) Second, the article says the analyst admitted to failing to consider a single factor in his analysis -- the impact of a two year net income regulatory rule on PCBC's dividend paying ability. Specifically it quotes him as saying "Honestly, I was not reviewing the earnings progression and considering how it would affect their ability to pay dividends." (Id.) Those are the only statements the article actually attributes to Mr. Deer.[2]

In short, Plaintiffs' claim that Mr. Deer admitted "no reasonable basis" is not supported by the very article upon which they rely to make their case. Nowhere in the article is the statement or implication that Mr. Deer said he issued the Buy recommendation with "no reasonable basis."

2. <u>Plaintiffs fail to plead subjective falsity</u>

Plaintiffs string cite four cases to create the proposition that other courts have denied motions to dismiss where analysts made materially false recommendations. (Opp. Mem. p. 11:7-16.) Analysis of those cases does not aid Plaintiffs. In three of the four cases cited, the plaintiff pled that the analyst <u>did not subjectively believe in the</u>

---

[1] Sandler O'Neill accepts the statements in the Beck article as pleaded facts for purpose of this motion. However, because they are pure hearsay, it reserves the right to challenge their admissibility or weight in subsequent phases of this proceeding.

[2] *See In re Credit Suisse First Boston Corp. (Agilent Technologies) Analyst Reports Securities Litigation,* 431 F.3d 36, 49 (1st Cir. 2005) ("The fact that a speaker changes his or her mind and decides after the fact that an earlier opinion was ill-advised is insufficient to support an averment of subjective falsity.")

validity of the recommendation he was making -- a position Plaintiffs have not taken and cannot prove here. *DeMarco v. Lehman Bros., Inc.*, 309 F. Supp. 2d 631 (S.D.N.Y. 2004) (motion to dismiss denied because analyst misrepresented his true opinion about the stock); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 494 (S.D.N.Y. 2004) (same); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223 (D. Mass. 2004) (complaint could be fairly read to plead that the analyst did not believe recommendations were justified but issued them as a quid pro quo for continued investment banking business, a portion of which would augment the analyst's bonus). Both *Swack* and the fourth case, *Fogorazzo v. Lehman Bros. Inc.*, 341 F. Supp. 2d 274 (S.D.N.Y. 2004), included egregious conflict of interest facts in which analysts explicitly traded a Buy recommendation for investment banking business and profited personally by doing so. Plaintiffs have carefully not alleged any such quid pro quo here.

The important point is that in all of the analyst cases cited by either party, the courts looked to see whether the analyst's recommendation was subjectively false (or the functional equivalent, purchased as part of a clear quid pro quo). None of the cases cited here upheld a claim against an analyst for merely "getting it wrong."[3]

**B.   Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter**

Plaintiffs do not dispute that the PSLRA imposes a rigorous pleading standard; to avoid dismissal, the Complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Nor do they dispute that "[R]ecklessness only satisfies scienter under §10(b) to

---

[3] At page 9 of the Opposition Memorandum, Plaintiffs note the three kinds of falsity recognized in the Ninth Circuit with respect to opinion statements generally (without specific reference to analysts) but then go on to base their argument only on the "no reasonable basis" test. The Ninth Circuit has never squarely addressed the test for analysts in particular. Other courts considering that specific question have required proof of subjective falsity for analyst liability, *i.e.*, the analyst did not believe the opinion he was giving. See cases cited in Sandler O'Neill's opening brief at page 9:2-7 and in footnote 4.

the extent it reflects some degree of <u>intentional or knowing misconduct</u>." *In re Silicon Graphics Sec. Litig.,* 183 F.3d 970, 976-77 (9th Cir. 1999).

Plaintiffs devote only a little over a page to defending their pleading of scienter. (Opp. Mem. p. 14-15.) They do not make a serious attempt to rebut the arguments raised in the motion to dismiss. The issue for the Court is whether the facts pled here (not the conclusions) support a "strong inference" that Mr. Deer acted with an <u>intent to defraud</u>. On the contrary, all they support is an inference that Mr. Deer failed to consider one factor out of many in his June 17 Company Report and ended up on the wrong side of a prediction as to whether PCBC shares would go up or down. Even if that "wrong call" was a professional misstep -- even if it could be characterized as negligence -- that is far cry from a mental state reflecting intent to defraud.

        a.    <u>The failure to take "simple calculations and regulatory rules" into account</u>

First, the Opposition reiterates the argument that Mr. Deer "admittedly did not follow certain simple calculations and regulatory rules that could have been foreseen [sic] the Company's difficulties." (Opp. Mem. p. 14:21-24) Plaintiffs ignore the numerous cases cited in the moving papers which state that a mere mistake by a professional such as an analyst or accountant does not support an inference of fraud. (SO Mem. p. 15:11-25) Plaintiffs even fail to acknowledge that Sandler O'Neill cited those cases, and do not rebut them in the Opposition, apparently hoping the Court will not notice.

Second, as discussed in Section A.1 above, Mr. Deer does not admit in the Beck article that he committed fraud, or acted without any reasonable basis. He only admits he forgot to consider one factor in his analysis.

Third, the Plaintiffs' argument that Mr. Deer engaged in fraud by intentionally or recklessly failing to incorporate the two year net income rule into his June 17 Company Note is inherently flawed. The net earnings of PCBC were disclosed to the public in SEC filings every quarter, and the purported regulatory rule itself was not secret.

1  According to Plaintiffs' own pleading anyone (including other analysts and investors)
2  could have put two and two together, and should have.  A scheme to commit intentional
3  fraud by issuing an analyst report which ignores information in the public domain,
4  combined with a public regulation, is just not plausible.

5              b.    <u>Failure to withdraw the Buy Recommendation</u>

6  Plaintiffs devote only one sentence to their second scienter argument, restating
7  the position that "Sandler O'Neill failed to correct the June 17 upgrade even after its
8  analyst admitted [in the Beck interview] . . . that the upgrade was 'wrong'."  (Opp.
9  Mem. p. 14:25-27.)  Plaintiffs' "failure to withdraw the Buy" argument is weak support
10 for scienter.  At the same time Plaintiffs allege that Mr. Deer was "failing to withdraw"
11 the Buy recommendation Plaintiffs also allege that he was giving an interview to Rachel
12 Beck in which he admitted to the world that he made the "wrong call" and failed to
13 consider the two year net income rule.  He would not have given that interview if he
14 was truly embarked on a scheme to defraud.  *See Alfus v. Pyramid Technology Corp.*,
15 764 F. Supp. 598, 604 (N.D. Cal. 1991) (voluntary disclosure of negative information
16 negates an inference that defendant acted with intent to deceive).  Moreover, any
17 scheme to defraud based on failure to withdraw the Buy recommendation would be
18 ineffective in light of the fact that PCBC's suspension of dividends had already occurred
19 and been publicly disclosed.  There is no strong inference that, in failing to withdraw the
20 Buy recommendation, Mr. Deer was intending to defraud.

21             c.    <u>PCBC's later retention of Sandler O'Neill</u>

22 Third, Plaintiffs again attempt to support an inference of scienter by quoting the
23 sentence from the Complaint which says "Sandler O'Neill benefited from their false or
24 reckless statements . . . as they were retained by the Company . . . to serve as financial
25 advisor." (Opp. Mem. p. 15:1-5.)  Again, no allegation is made of a quid pro quo;
26 Plaintiffs do not even allege that the analyst <u>knew</u> Sandler O'Neill was in the running
27 for such an assignment.  And Plaintiffs again totally ignore the authorities cited in the
28 moving papers for the well-established proposition that mere pleading of motive is not

1  enough to create a strong inference of scienter.  (SO Mem. p. 17:13-23.)

2  Returning to the instruction in *Tellabs*, the Court instructed lower courts to look
3  at all the facts "holistically" to see whether the fraud inference is at least as strong or
4  stronger than any inference of good faith mistake or mere negligence.  *Tellabs, Inc. v.*
5  *Makor Issues and Right, Ltd.* 551 U.S. 308, 326, 127 S.Ct. 2499, 168 L.Ed. 2d 179
6  (2007).  Plaintiffs have failed to meet their burden sufficiently to plead scienter.  They
7  never explain why the facts pled are more consistent with an intent to defraud than with
8  an innocent or event negligent state of mind.

9  **C.     Plaintiffs Fail To Plead Loss Causation**

10  The third separate and independent ground for the motion to dismiss was
11  Plaintiffs' failure to plead loss causation.  It is Plaintiffs' burden to plead a statement of
12  <u>fact</u> by Sandler O'Neill, and then plead when and how the disclosure of the falsity of
13  that statement of fact caused their shares to decline in value.  (SO Mem. p. 18.)

14  In its original motion Sandler O'Neill pointed out that the Complaint never even
15  alleges that the Buy recommendation drove the stock price up.  (SO Mem. p. 18-19.)  In
16  their opposition Plaintiffs dismiss this as a "fact issue[] to be decided by the jury."
17  (Opp. Mem. p. 17:17.)  But in order to survive a motion to dismiss, Plaintiffs must at
18  least allege that Sandler O'Neill's Buy recommendation affected the stock price.

19  Plaintiffs attempt to cloud their failure to sufficiently plead facts by instead
20  asserting several inconsistent theories.  One is that the Buy recommendation was false
21  because it recklessly failed to take into account the impact of the two year net income
22  rule on PCBC's ability to pay dividends.  Under that theory, the falsity of the Buy
23  recommendation was revealed when the dividend suspension was announced on June
24  22.  However, Mr. Shotke sold all his PCBC shares a week <u>before</u> the Buy
25  recommendation, and then repurchased PCBC shares again on June 23 – the day <u>after</u>
26  <u>PCBS's announcement of the dividend suspension</u>.  The purported "falsity" of the Buy
27  recommendation was, under Plaintiffs' own theory, revealed to the market before he
28  purchased.  Plaintiffs cannot blame Shotke's decision to purchase, or the fact that his

shares continued to go down in price, on the alleged "falsity" of the Buy recommendation.[4]

Plaintiffs also allege that the Buy recommendation was false because it gave the impression that PCBC had <u>sufficient reserves for bad loans</u>. (Opp. Mem. p. 1:16-18.) However, the Complaint does not allege a single basis to conclude that Sandler O'Neill knew the reserves were inadequate prior to the July 30 press release.

Plaintiffs then try another tack: they allege that the Buy recommendation was false because it represented that PCBC was generally a "<u>good investment</u>." (Opp. Mem. p. 2:5.) However courts have rejected liability based on such general statements of optimism. *See In re Caere Corporate Sec. Litig,* 837 F. Supp. at 1058 (general statements of optimism and prediction of future success too vague to be actionable). Moreover, in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062-63 (9th Cir. 2008) the Ninth Circuit insisted on a close factual connection between the defendants' allegedly misleading statements and the disclosure that finally revealed those statements to be misleading in order for loss causation to be adequately pled. Allowing Plaintiffs to plead that the Buy recommendation was false because it generally represented PCBC to be a "good investment" would allow Plaintiffs to claim that the later disclosure of almost any bad news rendered the prior statement actionable. That would not meet the strict requirement laid down by the Ninth Circuit in *Metzler*.

---

[4] Plaintiffs completely fail to address the difference in purchase/sale dates in their opposition to the Sandler O'Neill motion. Curiously, in their opposition to the PCBC motion to dismiss the Shotke Complaint, also filed on January 15, 2010, they state that dismissal should be denied because lead plaintiff "the Pagano family" made their only purchase on May 21, 2009, and then held for the remainder of the class period. (Opposition to PCBC motion, p. 4 n. 3.) Based on that statement, the Pagano family clearly has no claim against Sandler O'Neill. The only factual misstatement alleged against Sandler O'Neill – the Buy recommendation – occurred on June 17. That is a month <u>after</u> the Pagano family purchase. The Pagano family could not possibly have been influenced by or harmed by the "Buy" recommendation.

**D. Failure to Downgrade**

Sandler O'Neill's motion identified several problems with Plaintiffs' theory that the "failure to downgrade" was an actionable misrepresentation. First, as already noted above (p. 7, *supra*), no strong inference of scienter arises from the fact that Sandler O'Neill did not downgrade PCBC to Hold until July 30. Second, Plaintiffs ignore the fact that the Buy recommendation was not a continuously operative statement; the Company Note itself discloses that it speaks only as of the date the Note was issued. It was not an ongoing "rating" which remained operative until withdrawn. (SO Mem. p. 12:25-28.)

Third, Plaintiffs spend a large portion of their brief arguing that Sandler O'Neill had a duty to "correct" the Buy recommendation because it later learned it was inaccurate when made. (Opp. Mem. p. 11-13.) But Plaintiffs also affirmatively plead that the analyst gave a press interview, published on the Internet, in which he disclosed to the world that the Buy recommendation was the "wrong call." Moreover, to the extent it was the wrong call due to failure to take into account the risk of a dividend suspension, the dividend suspension itself was publicly disclosed by PCBC's own press release. Plaintiffs have not pointed to a single fact that was hidden from the market due to Sandler O'Neill's conduct.

## II. CONCLUSION

For all the reasons stated above, Sandler O'Neill respectfully submits that the Shotke Complaint should be dismissed as to Sandler O'Neill.

DATED: January 21, 2010                Respectfully submitted,

NIXON PEABODY LLP


By:  /s/ Karl. D. Belgum
Attorneys for Defendant
SANDLER O'NEILL & PARTNERS L.P.