UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-06501 RGK (PLAx) | Date | January 28, 2010 |
|---|---|---|---|
| Title | *WILLIAM JURKOWITZ v. PACIFIC CAPITAL BANCORP, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS)** Order Re Defendants' consolidated Motions to Dismiss (DE 27 and 30); Plaintiff's Motion for Appointment as Lead Counsel (DE 37)

## I.   INTRODUCTION

Plaintiff William Jurkowitz ("Plaintiff") brings suit against Defendants Pacific Capital Bancorp ("Bancorp"), George Leis, and Davis Porter, (collectively, the "Bancorp Defendants"). Plaintiff alleges that the Bancorp Defendants defrauded the Bancorp shareholders within the meaning of § 10b5 of the Securities and Exchange Act of 1934 by misrepresenting the adequacy of Bancorp's loan reserve levels to the market.

Plaintiff also brings suit against Sandler O'Neill & Partners, L.P., and Sandler O'Neill Asset Management LLC (collectively, the "analyst Defendants"). Plaintiff alleges that the analyst Defendants defrauded the market by misrepresenting the value of Bancorp's shares of stock ("stocks") to the market.

Before the Court are the Bancorp Defendants' and the analyst Defendants' Motions to Dismiss under Rule 12(b)(6), which the Court consolidates for the purpose of this Order. Fed. R. Civ. P. 12(b)(6). For the reasons offered below, the Court **GRANTS** Defendants' Motions to Dismiss. And Plaintiff's Motion for Appointment as Lead Counsel is **DENIED as moot**.

## II.   FACTUAL BACKGROUND

Bancorp is a bank holding company and the parent company of Pacific Capital Bank, N.A., a nationally chartered bank that operates 46 branches in and around Santa Barbara, California. George Leis and Davis Porter are two of Bancorp's senior executives.

The analyst Defendants provide financial services to their customers. Among other things, they

publish financial research reports that recommend whether investors should "buy," "sell," or "hold" any particular shares of stock.

On April 30, 2009, Bancorp issued a quarterly financial statement. Therein, Bancorp stated that it recorded a provision for loan losses of $73.5 million. In an accompanying press release, however, the Bancorp Defendants colored the future with optimism: "we continue to maintain a strong allowance for loan losses, which we believe will enable us to absorb losses in the portfolio as the recession continues." The press release also informed the market of a series of new measures that Bancorp had just put in place "to mitigate the risk going forward." In a press conference that took place on the same day, Defendant George Leis voiced more optimism about future loan losses: "[W]e have not seen the delinquency metric really be too negative at this point. I think it's been relatively manageable." In sum, despite increasing their loan loss estimates on April 30, 2009, the Bancorp Defendants made reassuring statements about what was to come in the future. Bancorp's stocks sold at $6.49 on that day.

Similarly, on May 11, 2009, Bancorp seemed reassuring: "Management believes that the continued increase in [allowance for loan losses] will better position the Company to manages anticipated loan losses."

The analyst Defendants shared the same enthusiasm about Bancorp. On June 17, 2009, they issued a report that updated Bancorp's stock status from "hold" to "buy." In the report, the analyst Defendants noted that Bancorp's stocks were undervalued:

> While perhaps some discount is justified due to [Bancorp's] California footprint, we think it is overdone given the Company's countervailing capital strength and the untaped value of the central coast franchise.

On the same day, Plaintiff purchased six thousand shares of Bancorp Stock. Plaintiff does not specify the price he paid for each share of stock, however.

As it turned out, Defendants were too optimistic. On June 22, 2009, less than two months after the April 30 announcement and five days after the "buy" recommendation upgrade, Bancorp announced that it deferred regularly scheduled payments on certain notes and dividends. The announcement signaled weakness in Bancorp's finances. As a result of this announcement, Bancorp's stocks fell from $3.31 to $2.65 per share from market open to close time on that day.

And on July 30, 2009, Bancorp announced that it recorded a provision for loan losses of $194.1 million. This announcement indicated that the expected Bancorp's loan losses were much larger than what Bancorp announced on April 30 ($73.5 compared to $194.1 million). It is the discrepancy between the optimistic statements of April 30, May 11, and June 17 on the one hand, and the following statements of June 22 and July 30 that give rise to the present action.

### III.    JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must assume that the plaintiff's allegations are true and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.    DISCUSSION

The main issue before the Court on this Motion is whether Plaintiff's pleadings allege the asserted 10b5 violations with sufficient specificity. The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, prescribes a heightened pleading standard for suits brought under § 10b5. And since 10b5 lawsuits sound in fraud, the plaintiff's complaint must also comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b).[1] In order to establish a 10b5 violation, Plaintiff needs to establish 6 elements: 1) a material misrepresentation or omission, 2) scienter, 3) a connection with the purchase or sale of property, 4) reliance, 5) loss, and 6) loss causation. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5. The Bancorp and analyst Defendants argue, in separate motions, that Plaintiff has failed to adequately plead the first (false representation of material facts), second (scienter), and sixth (loss causation) elements.

The PSLRA requires the plaintiff to plead scienter with particularity. 15 U.S.C. § 78u-4(b)(2). The plaintiff must "state with particularity facts giving rise to a *strong inference* that the defendant acted with *the required state of mind*." *Id.* (emphasis added). Therefore, in order to determine whether Plaintiff has met this standard, the Court must pay attention to two key phrases in the statute: 1) strong inference, and 2) required state of mind. *Id.*

As to the first term, strong inference, the Supreme Court has recently provided some guidance. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-22 (2007), the Supreme Court held that the "strong inference" requirement is satisfied, if the inference of the presence of the required state of mind is at least as strong as the inference of lack thereof. In other words, in order to enforce the "strong inference" pleading requirement, the Court must weigh all allegations in the pleading that point towards the existence of the required state of mind and all that counsel against it. If the two inferences are at least equally strong, the Court must allow the parties to proceed to discovery.

In the balancing act, the Court must, as on any other 12(b)(6) challenge, assume the truth of the factual assertions in the complaint. *Id.* at 322. The Court must also look at the totality of the allegations in the Complaint as a whole to evaluate the existence of a strong inference of scienter. *Id.* at 322-23. It is immaterial, therefore, that no single allegation gives rise to a strong inference of scienter; the question is whether all the allegations, documents attached to the complaint, and matters of which courts may take judicial notice meet the standard. Moreover, courts need not only consider particular facts; the scienter inquiry extends to omissions and ambiguities in the pleadings as well. *Id.* at 325-26

Based on these mandates, the Ninth Circuit has recently held that trial courts may find scienter based on facts and assumptions that indirectly suggest scienter may exist, as long as the totality of the circumstances–including the practical common sense view of the allegations–give rise to "cogent and compelling" inference of scienter. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). For example, courts may find scienter in part based on the assumption that corporate executives have knowledge of the internal operations of the business. *Id.* at 782. Courts

---

[1]Since the Court holds that Plaintiff's pleadings do not meet the heightened pleading requirements of the PLSRA, the Court does not address the Rule 9(b) requirements.

may also evaluate evidence of "motive and opportunity" to weigh the scienter allegations. *Id.* (overruling *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999)(*hereinafter Silicon Graphics*)).

Next, the Court turns to the required state of mind. The Supreme Court has yet to decide whether anything less than conscious misconduct suffices to satisfy the scienter requirement. *Id.* at 319 n.3. But in the Ninth Circuit, either intentional conduct or *deliberate recklessness* may constitute scienter under the statute. *See Silicon Graphics*, *supra*. (emphasis added). In *Silicon Graphics*, the Ninth Circuit defined deliberate recklessness:

> Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* at 976 (*overruled* on other grounds)(quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1044-45 (7th Cir.), *cert. denied*, 434 U.S. 875 (1977)). In other words, by deliberate recklessness, the Ninth Circuit means conduct that is so obviously wrong that hints of bad intent. *Id.* ("[R]ecklessness in the context of § 10(b) is a form of intentional conduct.")(citations omitted).

With these principles in minds, the Court turns to the facts of this case and analyzes the allegations asserted against the Bancorp Defendants and the analyst Defendants in turn.

### A.     The Bancorp Defendants

The gist of Plaintiff's case against the Bancorp Defendants is their failure to disclose to the market the exact volume of their "bad loans." Plaintiff does not offer any evidence that could directly establish scienter. But he alleges certain facts that, according to Plaintiff, create an inference of scienter. In particular, Plaintiff points to the April 30 report and contrasts it with its July 30 counterparts. The comparison reveals a drastic increase in the estimate of the size of the bad loans within a relatively small period of time: The loss projection increased from $73 to $194 million within three months. Plaintiff also points to certain statements that accompanied the reports. He alleges that the Bancorp executives voiced optimism on April 30, when in light of the July 30 announcement, there was no reason for such optimism. He also takes issue with the Bancorp Defendants' labeling the loan loss-estimate as "conservative." He argues that the promise of a conservative estimation must have been a lie because later estimates were more than two times larger than the April 30 statement.

It is important to also note what is *not* in the pleadings. *See Tellabs*, 551 U.S. at 325-26. Plaintiff does not point to any objectively measurable criterion that should have helped the Bancorp Defendants make a more realistic assessment of their losses in April. He does not state what signs or symptoms could have put the Bancorp Defendants on notice of their misestimation. He also does not allege that the Bancorp Defendants made an accounting mistake or failed to follow Generally Acceptable Accounting Practices.

There is also no explanation for *why* the Bancorp Defendants would lie about the loan losses in April. Plaintiff does not state, for example, that the Bancorp executives have traded stocks and benefited from their incorrect loan reserve estimates. Indeed, it is undisputed that the two executives that are named as Defendant in this action did not sell a noteworthy portion of their stock after the April 30 announcement. Also there is no allegation that the executives had some other pecuniary

interest in the matter such as keeping their jobs or salaries. That is hardly surprising because the misestimation was disclosed within only 3 months. Indeed, Plaintiff has no explanation for why the Bancorp Defendants would lie about the status of the loans only to correct the statement 3 months later.

Based on these allegations and the omissions therein, the weight of the inference of bad intent or deliberate recklessness does not come close to the strength of other inferences, for example that the amount of loan losses was simply unpredictable, or that the Bancorp executives made a good faith mistake. Indeed, all that Plaintiff alleges, evaluated as a whole, does not even give rise to a strong inference of negligence: Plaintiff alleges that the Bancorp Defendants should have announced a higher amount for their loan losses in April, and that they should not have sounded optimistic then. But there is nothing in the Complaint to indicate that the correct estimation could have been made at the time the alleged misstatements were made.

Taken the allegations in light most favorable to Plaintiffs, it is appears that the Bancorp Defendants made a mistake in their predictions about the future. Now that the mistake has been revealed, Plaintiff thinks that it *should not have been* made. But that is the manifestation of "fraud by hindsight," which courts have always deemed insufficient. *Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir. 1978)(Friendly, J.)(*cited in Tellabs*, 551 U.S. at 320). Deeming Plaintiff's allegations as sufficient would convert every corporate miscalculation into a 10b5 violation. Plaintiff's Complaint against the Bancorp Defendants should be dismissed.

### B.      The Analyst Defendants

The fraud claim against the analyst Defendants suffers from the same deficiencies as the claims against the Bancorp Defendants. There is no explanation for why the analyst Defendants would lie about Bancorp's loan losses. There is also no allegation that the analyst Defendants benefitted financially from changing the Bancorp stock valuation from "hold" to "buy."

The only basis for finding scienter, according to Plaintiff, is that the analyst Defendants did not change the stock value from "buy" to "hold" for some time after the July 30 statement, when the misestimation of loan losses was revealed. Plaintiff takes that fact as indication that the analyst Defendants must have originally intended to defraud the investors.

That sole allegation is insufficient. What the analyst Defendant did after the July 30 statement is irrelevant to their alleged intent to deceive back in June. And there is no basis for hypothesizing how the analyst Defendants' reaction to the July 30 statement reflects their intentions in setting the stock value to "buy" in the first place. In this light and for all the reasons stated in Part IV.B. *supra*, Plaintiff's claim against the analyst Defendants should also be dismissed.

## V. CONCLUSION

For the reasoned offered above, the Court **GRANTS** Defendants' consolidated Motions to Dismiss. Plaintiff's Motion for Appointment as Lead Counsel is **DENIED as moot**.

**IT IS SO ORDERED.**

|                    | :     |
|--------------------|-------|
| Initials of Preparer | slw |